(No. 30700.— ▉▉▉▉▉▉▉▉▉)

THE PEOPLE *ex rel.* Charles Lauth, County Collector, Appellee, *vs.* WILMINGTON COAL COMPANY *et al.*—(ELGIN, JOLIET AND EASTERN RAILWAY COMPANY *et al.,* Appellants.)

*Opinion filed January 19, 1949.*

GRAY, THOMAS & WALLACE, and BARR & BARR, both of Joliet, for appellants.

JAMES E. BURKE, State's Attorney, (CHARLES J. McKEOWN, of counsel,) both of Joliet, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, the county treasurer and *ex-officio* county collector of Will County, applied to the county court of Will County for judgments against and orders of sale of the lands of the Elgin, Joliet and Eastern Railway Company, the Chicago, Rock Island and Pacific Railway Company and the Joliet Union Depot Company for delinquent

taxes. Each railroad company objected to the educational fund tax levy of High School District No. 204 for the year 1945 as being excessive for the same reason and the causes were consolidated. The objection was predicated on the assertion that the special election held in the school district on September 15, 1945, and purporting to authorize an increase in taxes for educational purposes was illegal and void because the reverse side of the ballots used at the election allegedly did not bear the facsimile signature of the public officer causing the ballots to be printed. Evidence was heard on the issue of fact as to the form of the ballot and, thereafter, the county court overruled the objection and entered judgments in favor of the collector. The railroad companies prosecute this appeal.

As the sole ground for reversal, the objectors contend that the judgment of the county court is contrary to the manifest weight of the evidence. In addition to denying this assertion, the collector advances the more fundamental argument that there is no statutory requirement that ballots in local elections on the proposition of increasing school taxes must contain the facsimile signature of the public officer causing the ballots to be printed. The issue thus raised must be considered first.

Section 7 of article 16 of the Election Code relates to both Statewide and local elections on public measures. (Ill. Rev. Stat. 1947, chap. 46, par. 16-7.) Pertinent to the present inquiry it ordains, "Whenever a public measure is submitted to be voted upon by the people within any district or political subdivision less than the State the substance of such public measure shall be clearly indicated on a separate ballot * * *. Any such separate ballot shall be printed on paper of sufficient size so that when folded once it shall be large enough to contain the following words, which shall be printed on the back, 'Ballot for (name of public measure to be voted on)'. * * * All provisions of this Act relating to ballots shall apply to such separate ballot."

Among the other provisions of the Election Code touching on the form of ballots, section 3 of article 16 provides, in part, "On the back or outside of the ballot, so as to appear when folded, shall be printed the words 'Official Ballot,'" followed by the designation of the polling place for which the ballot is prepared, the date of the election and a facsimile of the signature of the clerk or other officer who has caused the ballots to be printed." Ill. Rev. Stat. 1947, chap. 46, par. 16-3.

Whether article 16 of the Election Code is applicable to the election in question depends on principles now well established. Where the School Code, or any other statute establishing special or local elections, provides the particular form of ballot to be used, article 16 of the Election Code has no application. (*People* v. *Birdsong,* 398 Ill. 455; *Routt* v. *Barrett,* 396 Ill. 322; *Sanders* v. *Township of Salem,* 385 Ill. 362; *People ex rel. Burkholder* v. *Peoria and Eastern Railway Co.* 375 Ill. 197.) Conversely, in the absence of a prescribed form of ballot for a special election, article 16 of the Election Code is applicable. *People ex rel. Rhodes* v. *Miller,* 392 Ill. 445; *People ex rel. De Rosa* v. *Chicago and North Western Railway Co.* 391 Ill. 145; *People ex rel. Henry* v. *New York Central Railroad Lines,* 381 Ill. 490; *People ex rel. Toman* v. *Chicago Great Western Railroad Co.* 379 Ill. 594.

The special election of September 15, 1945, in High School District No. 204 was held pursuant to the authority granted by section 3.1 of article 17 of the School Code. (Ill. Rev. Stat. 1947, chap. 122, par. 17-3.1.) Neither the particular section involved nor any other section of article 17 of the School Code establishes a form of ballot to be used in elections on the proposition of increasing school taxes. It follows, therefore, that the form of ballot in the election in question is governed by section 7 of article 16 of the Election Code and that all provisions of section 16-7 relating to local elections apply with equal force. By includ-

ing the requirement that "All provisions of this Act relating to ballots shall apply to such separate ballot," section 16-7 incorporates the mandatory provision of section 16-3 to the effect that, on the back or outside of each ballot, there shall be printed a facsimile of the signature of the clerk or other officer causing the ballots to be printed. Furthermore, where article 16 of the Election Code is applicable, the failure of ballots to bear the facsimile signature of the public officer causing the ballots to be printed makes both the ballots and the election illegal and void. Ill. Rev. Stat. 1947, chap. 46, par. 17-16; *People ex rel. Vance* v. *Bushu,* 288 Ill. 277.

Whether the judgment of the county court sustaining the tax is contrary to the manifest weight of the evidence must next be determined. Prior to the hearing on the factual issue of the actual form of the ballot, the parties stipulated that High School District No. 204 levied a tax of $465,000 for educational purposes for the year 1945; that the county collector extended a rate of $1.25 per $100 of assessed valuation to produce the tax; that the legal rate for educational purposes was $1.00 unless an increased rate had been lawfully authorized by the electors of the high school district, and that the special election of September 15, 1945, was the only election relied upon as authorizing a tax rate of $1.25 for educational purposes. The issues at the hearing were thus reduced to the single question whether the ballots used in the election of September 15, 1945, were imprinted with a facsimile of the signature of the public officer causing the ballots to be prepared.

The principal witnesses were J. G. Skeel, secretary of the board of education of the high school district for eight years, and two men connected with the C. H. Peterson Printing Company. In substance, Skeel testified that he prepared the form of ballots for the election of September 15, 1945, and C. H. Peterson Printing Company printed the ballots. After the election, he burned all unused ballots

and, six months later, he received all the used ballots from the township treasurer and, pursuant to instructions, burned them and personally saw them destroyed. At the time of the trial in September 1947, Skeel did not have a used or unused ballot in his possession, nor did he know of the existence of one. He further testified that, according to his usual practice, his name would appear on the back of the ballots but he had no present recollection whether his name was printed on the ballots in question and, if so, whether it was in block type or facsimile form. During the examination of the witness, evidence of another election, held in May, 1947, for the purpose of increasing the same educational fund tax rate, was properly excluded upon the ground that it was irrelevant to the issue as to the form of the ballot used September 15, 1945.

C. H. Peterson testified to the effect that his firm was awarded the work of printing the ballots for the school district election held September 15, 1945; that, in accordance with his general instructions, a job file on this particular order was prepared in the usual manner by his employees, and that one of his instructions was that a sample of all printing work should be placed in the job file. Exhibits consisting of the combination file folder and instruction envelope for the printing work in question, two samples of the printing job and a delivery receipt for 16,000 ballots were subsequently admitted in evidence. The samples, ballots for each of two different precincts, were indorsed "J. G. Skeel," printed in block letters. According to Peterson, he did not place the samples in the file himself and did not know of his own knowledge what ballots were delivered to Skeel's office.

Samuel S. Todd related that he was a printer employed by C. H. Peterson Printing Company; that he set up the printing job for the election of September 15, 1945; that he recognized the samples as ballots printed by him for the election in question, and that the reverse side of the sam-

ples was the same as he had set the type. . On the other hand, Todd admitted that he did not place the samples in the file jacket; that he did not operate the press or run the copies off; that the pressman sometimes unlocks the type and makes changes, and that he did not know whether this job was changed after the pressman received the lockup of his type.

The only other testimony of importance was that of George W. Anderson. He stated that, in response to his request, Skeel said he would mail him a ballot for the election of September 15, 1945, and about ten days after the election he received a ballot in the mail. No letter accompanied the ballot. To his knowledge there was no designation on the envelope and he destroyed the envelope. The ballot was admitted in evidence and was identical in all material respects to the two ballots previously introduced. Recalled as a witness, Skeel testified that he had no recollection of having sent a ballot to Anderson.

In seeking to establish the invalidity of a tax, the burden of proof rests upon the taxpayer making the objection. (*People ex rel. McWard* v. *Wabash Railroad Co.* 395 Ill. 243; *People ex rel. Franklin* v. *Wabash Railroad Co.* 387 Ill. 450.) Moreover, in the absence of evidence to the contrary, the presumption obtains that the public officers levying the tax have properly discharged their duties. (*People ex rel. Ammann* v. *Wabash Railroad Co.* 391 Ill. 200; *People ex rel. Manifold* v. *Chicago, Burlington and Quincy Railroad Co.* 386 Ill. 56.) Furthermore, under familiar principles, where, as here, an appeal is taken on the ground that the judgment is against the manifest weight of the evidence, it is not enough to show that there is sufficient evidence to support a contrary judgment. To be successful, the evidence in behalf of the party prosecuting the appeal must be so strong and convincing as to completely overcome the evidence and presumptions, if any, existing in favor of the opposite party. Conversely, to sus-

tain the judgment in the case at bar it is only necessary to show that the evidence did not overcome the presumption of the regularity in the form of the official ballot used in the election.

The chief difficulty with the objectors' case is the circumstance that all the used and unused official ballots were destroyed six months after the election, as required by law. (Ill. Rev. Stat. 1945, chap. 46, par. 17-20.) To overcome this obstacle, the objectors introduced in evidence two samples from the printer's job file and one ballot received by mail, and ground their case on the fact that these exhibits were not printed with the required facsimile signature on the reverse side. In the same connection, objectors rely heavily on *People ex rel. Thompson v. Chicago, Rock Island and Pacific Railway Co.* 329 Ill. 467, involving the admissibility of election notices and ballots retained by a printer where all notices and ballots received by the election officials had subsequently been destroyed. Judgment against the taxpayer was reversed and the cause remanded, with directions to admit the exhibits and for further proceedings. Reflecting the strong nature of the testimony there adduced, this court said, "As to the road bond election of 1922, George M. Gould testified that he is a printer; that he had printed the notices for that election; that he secured a copy of what he printed from the county clerk, and after printing the same delivered the notices to the county clerk; that he afterwards saw a notice of the election posted on a telephone pole in his voting precinct and recognized it as one of the notices he had printed. He was handed what purported to be a notice of that election and testified that it was one of the originals which he had printed, and was in all respects the same as all other notices printed except that blank spaces were left to be filled in by the county clerk for the proper precinct. He testified that he set all of the type except what he characterized 'the fine print,' which had been set up by a linotype company and delivered to him;

that he read the proof and compared it with the copy he secured from the clerk, locked the type in the form and printed the same without change; that he was satisfied there had been no change in the notice he saw posted from what he had printed, for the reason that if there had been such change he would have noticed it. He also testified that the notice handed to him, which is marked 'Objector's Exhibit A,' was one of the impressions of the notices which he printed and which were posted, and that except as to the filling of the blanks it was an exact duplicate original; that he printed 300 of these notices."

By way of contrast, in the present case the type was set by witness Todd, printed by an unidentified person, and ballots were delivered to the board of education by still another person. The printing samples were placed in the job file by an unknown hand and there is no proof that they are exact duplicate originals of the finished product delivered to Skeel's office. There is no showing that any employee of the printing firm read the proof against the copy supplied by Skeel and no one testified to having compared one of the exhibits with a ballot used in the election and found that they were identical. Todd merely identified the printing sample as his work and admitted that changes could have been made by the pressman who actually ran off the ballots. Furthermore, as to the ballot received by Anderson, Skeel did not remember having sent it, and it was delivered in a plain envelope, without a covering letter. In the absence of the introduction of any official ballots used in the election and in view of the objectors' failure to establish that the exhibits introduced were exact duplicate originals of the official ballots, we are of the opinion that the judgment of the county court is not contrary to the manifest weight of the evidence. Just as a specimen ballot on file in the office of the county clerk does not constitute adequate proof of the allegedly improper form of ballot actually used in school elections, (*People ex rel. Pickerill* v. *New*

*York Central Railroad Co.* 391 Ill. 377,) under the circumstances of the present case, the printing samples and the ballot received by Anderson were insufficient to prove the form of the ballot in the special election of September 15, 1945.

A consideration of the effect of the validating act of July 21, 1947, (Ill. Rev. Stat. 1947, chap. 122, par. 407.16,) becomes unnecessary.

The judgment of the county court of Will County is affirmed.

*Judgment affirmed.*