COMEDY COTTAGE, INC., *et al.*, Plaintiffs-Appellees, v. JAY BERK, Indiv. and d/b/a Comedy Company, *et al.*, Defendants-Appellants.

First District (1st Division)   No. 85—2902

Opinion filed June 9, 1986.

Hollander & Hollander, of Chicago (Gary P. Hollander, of counsel), for appellants.

LaSusa & Storino, Ltd., of Des Plaines, for appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs, Edward Hellenbrand and Comedy Cottage, Inc., operate a comedy club known as the Comedy Cottage at 6350 North River Road in Rosemont, Illinois. They brought this injunctive action against Jay Berk, a former vice-president and general manager of the club. Among other things, the complaint alleged that Berk breached his fiduciary duty by acquiring a lease to the premises after the corporation's lease had been terminated and establishing a rival club there. The trial court agreed and enjoined Berk from interfering with plaintiffs' possession of the premises. Berk brought this interlocutory appeal. We affirm.

Hellenbrand began leasing the premises in 1975. He operated a restaurant and lounge which began presenting comedy acts produced by an agency known as the Comedy College. After a dispute with the owner of the Comedy College, Hellenbrand changed the name of the club to the Comedy Cottage and began presenting comedy acts on his own. The Comedy Cottage, Inc., was incorporated soon afterwards. Hellenbrand and his wife were the sole directors and stockholders of the corporation.

In 1978, Hellenbrand hired defendant Jay Berk as general manager of the Comedy Cottage. In 1979 or 1980, Berk was given 10% of the shares and made vice-president of Comedy Cottage. Experiencing health problems, Hellenbrand moved to Nevada and left Berk to manage the daily affairs of the business. For the next five or six years, Berk acted as general manager and Hellenbrand made periodic visits to the club.

In 1984, Hellenbrand and Berk discussed making Berk a 50% shareholder of the corporation. At trial Berk testified that Hellenbrand

promised to make him a half owner but later reneged on his promise. However, Hellenbrand testified that he offered the stock to Berk but Berk rejected the offer because the corporation was involved in a dispute regarding alleged lease arrearages with a former landlord. Hellenbrand testified that he decided not to reoffer the stock on the advice of family and friends. Berk was never made a 50% shareholder in the corporation.

In June 1984, the ownership of the premises changed hands and the Comedy Cottage's lease expired. Hellenbrand directed Berk to obtain a new lease for the premises. Berk negotiated with the new owner, defendant Carl Swanson, and entered into a written month-to-month lease for the premises. This lease listed Berk as lessee and not the corporation, but was signed by Berk as vice-president and general manager of the Comedy Cottage, Inc. Apparently, Hellenbrand was unaware of the month-to-month lease because he continued to direct Berk to obtain a new lease. In February of 1985, Berk sent Hellenbrand a proposed lease for a term of 1½ years. Again, the proposed lease listed Berk as lessee and not the Comedy Cottage, Inc.

Upon receiving the proposed lease, Hellenbrand became upset and called Berk to berate him for having the lease drawn up in his own name. Afterward Hellenbrand sent a letter to Berk informing him that he would never be made a 50% shareholder of Comedy Cottage, Inc. Hellenbrand also contacted Swanson to find why the Comedy Cottage, Inc., was not listed as lessee. Swanson told him to change the signatory portion of the lease as he saw fit. Hellenbrand changed the named lessee on the proposed lease to the Comedy Cottage, Inc., and signed it without removing Berk's name from the signatory portion of the lease. He sent the proposed lease back to Berk who was to sign it "if he wanted to." Berk then forwarded it to Swanson who never signed the proposed lease.

Shortly thereafter, Swanson decided not to lease the premises to Hellenbrand and delivered a notice to Berk terminating the month-to-month tenancy of Comedy Cottage. The notice was dated March 30, 1985. Berk testified that he immediately called Hellenbrand in Nevada to inform him of the notice of termination. During that conversation he resigned as an employee of the corporation. However, he agreed to continue running the club until Hellenbrand could take over. On March 30, 1985, Berk sent a formal letter of resignation by certified mail to Hellenbrand in Nevada and enclosed the notice of termination of the lease. Hellenbrand's wife signed for the letter on April 1, 1985. Although Hellenbrand claimed that he had already left for Chicago by the time the letter arrived, he testified that he telephoned Swanson from

Nevada on April 2, 1985. During their conversation Swanson said that he did not want to do business with Hellenbrand and that he had relet the premises to a new tenant who was not identified to Hellenbrand. Hellenbrand testified that he learned Berk was the new tenant of the premises when he arrived in Chicago on April 4, 1985.

After resigning from the Comedy Cottage, Inc., Berk formed a new corporation known as the Comedy Company, Inc., and began negotiating for a lease of the premises. On April 1, 1985, Berk contacted the insurance agent for the Comedy Cottage to have the corporation's group insurance policy transferred to his new corporation, the Comedy Company. However, the policy was never changed. On April 5 or 6, 1985, Berk executed a lease of the premises on behalf of the Comedy Company, Inc. During this period of time, Berk also attempted to get a liquor license for the premises in the name of the Comedy Company.

Subsequently, Hellenbrand placed a sign on the premises that stated, "Guess what? After ten years our landlord does not want us to live here anymore. So what? Neither do we. We do not need this building. Our Shows are great anywhere. We are expanding to the following locations ***." Another sign was also posted in the club that made a derogatory comment about Berk.

On April 26, 1985, Hellenbrand and Comedy Cottage, Inc., filed their complaint for injunctive and other relief along with their petition for a temporary restraining order. The complaint was directed against Berk, the Comedy Company, Inc., Carl Swanson and his realty companies as owners and trustees of the premises. In addition to allegations of breach of fiduciary duty, the complaint alleged the existence of a conspiracy between Berk and the owner of the premises.

The case came before Judge Murray, who granted a temporary restraining order. Judge Murray then heard testimony of the parties and others on various motions including a motion for preliminary injunction and a motion to dismiss. Subsequently, Swanson was dismissed as a party pursuant to a settlement in which he agreed to take a "neutral position" in the litigation and to be bound by the court's decision regarding the right to lease and possess the premises. As a result, the conspiracy charges were dropped and the case proceeded solely on the allegations of breach of fiduciary duty.

On defendant's motion, the cause was later transferred to Judge Higgins, who reviewed the transcripts of the hearings before Judge Murray and heard testimony by Hellenbrand and Berk, among others, on the motion for preliminary injunction. On September 4, 1985, Judge Higgins issued an order in which he found a breach of fiduciary duty based on his finding that Berk's acts of (1) resigning as general man-

ager immediately upon receipt of notice of termination of the month-to-month lease, (2) entering into a lease for the premises without disclosure, and (3) forming the Comedy Company to occupy the premises were designed to acquire his employer's longstanding business without purchase. Judge Higgins determined that plaintiffs had a right to possession of the premises and to secure such right by establishment of a leasehold agreement with the owner of the premises. The judge then enjoined Berk from interfering with plaintiffs' possession.

Berk filed the instant interlocutory appeal. The next day, the owners of the premises filed a motion in circuit court to intervene and to modify and vacate the judgment. Judge Higgins granted the motion to intervene but refused to modify or vacate the judgment, stating that his September 4, 1985, order did not dictate the terms of any proposed lease or provide that plaintiffs should be given the same lease as the one previously negotiated between Berk and the owner.

■ Initially, defendant asks that we make an independent factual evaluation of this cause because Judge Higgins made his findings based largely on transcripts of testimony and other documentary evidence. It is true that an appellate court is not bound by a trial court's findings of fact where the evidence before the trial court consists of depositions, transcripts or is documentary in nature. (*Delasky v. Village of Hinsdale* (1982), 109 Ill. App. 3d 976, 980, 441 N.E.2d 367.) In the case at bar, however, Judge Higgins not only reviewed transcripts, he also heard testimony by the parties prior to making his findings. Thus, the evidence before Judge Higgins was not entirely documentary in nature. Because the trial judge had the opportunity to observe witnesses and we did not, we decline defendant's invitation to make an independent analysis of the facts.

The principal issue before us is whether defendant breached his fiduciary duty of loyalty to the Comedy Cottage. Defendant asserts that he did not breach his fiduciary duty because: (1) he resigned his position with the corporation before entering into competition; and (2) any corporate opportunity regarding a lease of the premises was terminated by the owner.

■ An officer of a corporation owes a fiduciary duty of loyalty to his corporate employer. (*Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 760-61, 444 N.E.2d 549, *appeal denied* (1983), 93 Ill. 2d 542.) An officer's duty of loyalty includes the obligation to disavow any corporate opportunity where the officer's private interest would conflict with those of the corporation. (*Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 285, 422 N.E.2d 953; *Patient Care Services, S.C. v. Segal* (1975), 32 Ill. App. 3d 1021, 1029, 337 N.E.2d 471, *appeal*

*denied* (1976), 61 Ill. 2d 602.) In determining whether an officer may take advantage of a business opportunity in which a corporation is interested, courts consider whether the corporation had an interest, actual or in expectancy, in the opportunity and whether the acquisition thereof by the officer would hinder or defeat plans and purposes of the corporation in carrying on or developing legitimate business for which it was created. *Paulman v. Kritzer* (1966), 74 Ill. App. 2d 284, 219 N.E.2d 541, *affirmed* (1967), 38 Ill. 2d 101; *Northwestern Terra Cotta Corp. v. Wilson* (1966), 74 Ill. App. 2d 38, 46, 219 N.E.2d 860.

■■ It must be recognized that at least initially the Comedy Cottage possessed a protectable property interest in the expectancy that the lease of its place of business would be renewed. (*Consumers Co. v. Parker* (1923), 227 Ill. App. 552, 563; see also *Patient Care Services, S.C. v. Segal* (1975), 32 Ill. App. 3d 1021, 1029-30, 337 N.E.2d 471 (renewal of contract for services at hospital constituted corporate opportunity); 3 Fletcher, Cyclopedia Corporations sec. 865, at 233 (1975).) The acquisition of a lease of the premises by defendants hindered corporate plans to utilize the goodwill and public patronage built up during its many years of operation at the same location. Thus, Berk had a duty to refrain from acquiring the lease at the expense of the corporation.

■■ Defendant's duty is not inconsistent with his right to enter into competition with a former employer upon leaving such employment (absent a restrictive contractual provision to the contrary). (*Voss Engineering, Inc. v. Voss Industries, Inc.* (1985), 134 Ill. App. 3d 632, 635-37, 481 N.E.2d 63; *Cross Wood Products, Inc. v. Suter* (1981), 97 Ill. App. 3d 282, 285, 422 N.E.2d 953.) However, the resignation of an officer will not sever liability for transactions completed after the termination of the party's association with the corporation if the transactions began during the existence of the relationship or were founded on information acquired during the relationship. *H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285, 292, 379 N.E.2d 765, *appeal denied* (1979), 72 Ill. 2d 582; see also 3 Fletcher, Cyclopedia Corporations sec. 860, at 264 (1975).

As vice-president and general manager of the Comedy Cottage, defendant was in charge of running the day-to-day operations of the corporation. He was personally entrusted with the negotiations for the renewal of the lease. Because of his confidential position, defendant had knowledge of the prior negotiations with the landlord, the prior month-to-month lease and the circumstances surrounding its termination. In particular, Berk was still general manager when he received notice of termination of the corporation's lease. Berk then used the

knowledge gained as a result of his position with the corporation as an opportunity to resign and obtain a lease for himself without competition or disclosure. Even assuming *arguendo* that defendant did not begin competing for the lease until after his resignation, defendant remained bound by his fiduciary duty because his acquisition of the lease was based upon knowledge acquired during his employment. The fact that the information involved in this case does not rise to the level of a trade secret does not negate the existence of a fiduciary duty with respect to this transaction. See *Smith-Shrader Co. v. Smith* (1985), 136 Ill. App. 3d 571, 578, 483 N.E.2d 283; *H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285, 291-92, 379 N.E.2d 765; *Patient Care Services, S.C. v. Segal* (1975), 32 Ill. App. 3d 1021, 1029, 337 N.E.2d 471.

In addition, Berk contends that because the corporation sought to obtain the lease without success, he could acquire the lease even though the corporation was more or less interested in it, citing *Northwestern Terra Cotta Corp. v. Wilson* (1966), 74 Ill. App. 2d 38, 219 N.E.2d 860. However, *Northwestern Terra Cotta* is distinguishable. There, a corporate director paid $7 per share for stock which his corporation had unsuccessfully sought to purchase for $5 per share. No breach of fiduciary duty occurred because the court found no support for the claim that the corporation was interested in acquiring the stock for the higher price paid by the director. (74 Ill. App. 2d 38, 47-48, 219 N.E.2d 860.) Here, in contrast, the corporation remained interested in the property acquired by its former officer, and no evidence indicated that he acquired the lease for a price higher than the corporation was willing to pay.

■ Defendant claims that any opportunity for the corporation to obtain a renewal of the lease was eliminated when the owner of the premises terminated the prior month-to-month lease and announced that he would no longer deal with Hellenbrand. However, Hellenbrand entered the negotiations only after Berk forwarded without explanation a proposed lease that listed Berk as lessee and president of Comedy Cottage, Inc. It appears from the record, therefore, that the personality conflict between Hellenbrand and the owner arose, in part, because Berk failed to clarify his actions to his employer or the owner of the premises. Moreover, once Berk learned of the termination of the corporation's lease, he did little or nothing to rectify the situation despite his special responsibilities in this matter. Under these circumstances, we cannot say that the trial court erred in finding that Berk breached his fiduciary duty.

At oral argument, defendant asked that we dissolve the injunction

and allow him to compete for the lease. He claims the trial court's "clarification" of its order determined that plaintiff had no clearly ascertainable property right that needed injunctive protection. We do not agree.

■■ The trial court's original order of September 4, 1985, expressly recognized plaintiffs' right to possession of the premises and to secure such right by obtaining a leasehold agreement with the owner. The trial court's order enjoining defendant from interfering with plaintiffs' possession protected the corporation's property interest in obtaining a lease of its place of business. When the trial court denied the landlord's motion to modify or vacate the judgment, the court "clarified" its original order by noting that its order did not dictate the terms of any proposed lease or provide that plaintiffs should have the same lease as the one previously negotiated between defendant and the landlord. Nothing in the trial court's "clarification" of its order altered or eliminated plaintiffs' property interest in the premises. Therefore, we decline to dissolve the injunction.

■■ Finally, defendants contend that even if they violated their legal responsibilities in this matter plaintiffs should be denied relief on the basis of the unclean hands doctrine. This doctrine precludes a party who has been guilty of misconduct, fraud or bad faith from receiving any relief from a court of equity. (*Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 369 N.E.2d 498, *appeal denied* (1978), 67 Ill. 2d 592.) the doctrine will only be applied where the alleged misconduct is connected to the matter in litigation. *Patient Care Services, S.C. v. Segal* (1975), 32 Ill. App. 3d 1021, 1033, 337 N.E.2d 471; *Consumer Co. v. Parker* (1923), 227 Ill. App. 552, 571.

Defendants contend that the doctrine should be applied because Hellenbrand reneged on his promise to make Berk a 50% owner of the corporation and put up a sign in the club that made a derogatory comment about Berk. These allegations do not approach the type of situation requiring the application of the unclean hands doctrine. The gist of the complaint is that Berk unlawfully secured a lease of the premises. Defendants' allegations are totally unconnected with the subject matter of the complaint and are insufficient to cause this court to apply the doctrine of unclean hands. See *Patient Care Services, S.C. v. Segal* (1975), 32 Ill. App. 3d 1021, 1033-34, 337 N.E.2d 471.

For the reasons stated above, we affirm the judgment and order of the circuit court of Cook County.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.