VECO CORPORATION, Plaintiff-Appellant, v. ROBERT H. BABCOCK *et al.*, Defendants-Appellees (Brokers and Traders Insurance,[1] Defendant).

First District (2nd Division)    No. 1—91—3624

Opinion filed February 9, 1993.—Rehearing denied March 25, 1993.

---

[1]Although Brokers and Traders Insurance was named as a defendant in plaintiff's complaint, no appearance or answer was filed in its behalf. No default against it was sought or entered, nor does any judgment refer to it. No appearance on appeal was filed for it and the caption on appeal must be modified as set forth.

Veverka, Rosen & Haugh, of Chicago (Donald Veverka, Michael Haugh, and Elizabeth Jurkacek, of counsel), for appellant.

Holleb & Coff, of Chicago (David Herbst and Richard Rhodes, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff, Veco Corporation (Veco), an Illinois corporation, appeals from a judgment deciding the issues in favor of defendants, Robert H. Babcock and Margaret F. Michails, two of its former officer-employees. Presented as issues for review are whether the circuit court erred in implicitly holding that defendants did not breach their fiduciary duties while serving as officers and employees of plaintiff, and in the court's denial of damages.

Veco, formed in 1970 by its sole shareholder David Vear, is a life insurance benefit planning and financial services firm. Veco earns commissions based on the annual insurance policy premiums paid by its participants, which it earns only while it is the broker of record.[2]

Babcock and Michails were former high-ranking officers of Veco. Babcock, initially employed by Veco as a salesman in 1972, by 1985

---

[2]At oral argument it was ascertained that when there is a change in the broker of record, the earnings of the previous broker end and the entitlement to earnings for the new broker accrue immediately.

became executive vice-president, the senior executive with authority over all Veco's group and employee benefits insurance. His management authority extended to several Veco group clients, among which was the National Exchange Benefit Trust (NEBT). NEBT was an association group account that consisted of individuals who traded at the Chicago Board of Trade, Chicago Mercantile Exchange, Chicago Board Options Exchange, and the Mid-American Stock Exchange. Veco earned about $250,000 in commissions from NEBT alone in 1985. That year, Veco paid Babcock a $70,000 salary and a $56,000 bonus. Michails, first employed by Veco as an assistant to a financial planner in 1978, by 1985 became vice-president in charge of office administration. Michails' annual base salary was in the mid-$30,000s in January of 1986.

In December 1985, Michails and Babcock began to discuss leaving Veco to form their own company. Michails agreed that it was her "intention to take the business of Veco and move it over to" their own company. Michails spoke with another Veco employee, Jeanne Tucker, about the new company. Patricia Walker, another Veco employee, also was made aware of their plans.

Michails and Walker agreed to join Babcock sometime between January 1 and January 27, 1986. Tucker spent 90% of her time servicing NEBT. Babcock cautioned them not to discuss their plans with Vear. Babcock admitted he planned to convert Veco business to his new company, CorMac, Inc. (CorMac), but denied expending any effort to do so before his termination.

Babcock stated that in January 1986, while he was still employed by Veco, he incorporated CorMac, in which Babcock owns a 75% interest and Michails a 25% interest. Babcock found office space for CorMac and ordered office equipment, telephone systems, and computer software. Babcock informed various insurance carriers of his plan to form CorMac, including NEBT's underwriter.

Babcock prepared a document, introduced in evidence, which Michails typed at Veco on January 14, 1986. This document was the business plan for CorMac (the Plan). Babcock testified that the Plan "outlines what we intended to do."

The Plan provided:

"On February 1st, 1986 CorMac, Inc. will begin operation as an insurance and financial services company. The next three to four weeks will be the most important period of CorMac's existence dealing with the termination from Veco Corporation. ***

Participants in CorMac are Bob Babcock, Peg Michails, Jeanne Tucker, Pat Walker and Shelly Thompson.[3] All are aware of the situation except Shelly Thompson who will be asked on or about 01/31/86.

***

We are intending to take the N.E.B.T. business with us and a careful takeover needs to be planned. ***

CorMac, Inc. will sell insurance and other financial products to individuals and corporations in the greater Chicago area. We will initially concentrate on writing current cases known to us as well as the conversion of approximately 30-35 million dollars of NEBT term business. ***

In addition we will continue to sell benefit plans to 50 employee plus corporations. *** Value of the group business we hope to take with us ranges from $40,000 to $75,000 annually. Prospect files *** should be set up ***.

* * *

Over the next three weeks we will need to accomplish much so that the transition can be as easy as possible. ***

*** I will address each area specifically outlining the tasks which need to be accomplished by 01/31/86. ***

* * *

—Takeover the NEBT
—Broker of Record on Group Business.

* * *

—Records and information from the office.
—Lists of prospects.

* * *

The following information or rather copies of or tapes of should be out of the office by 01/24/86.

P—Full client list with address and phone numbers

P—Full attorney and accountant list with address and phone numbers

B—Important papers from N.E.B.T. term underwriting files

B—Important papers from transferring group accounts

B—Important papers from prospective transferring clients

B—Important papers from prospective transferring group clients

---

[3]As the Plan evolved, those given specific assignments were identified by initial: B = Babcock; P = Michails; and J = Tucker.

> J—copy (tape) of full N.E.B.T. system
>
> J—Copies of medical enrollment cards
>
> J—Copies of LTD, dental, NYLIC, individual dental, etc. records and other information as needed from the N.E.B.T.
>
> J—Copies of last EOB statements on each individual also last EOB of 1985
>
> P—Copy (diskette) of full Executive Life System and ECS System
>
> P—Copy (diskette) of all other important systems."

Babcock gave Michails and Tucker the Plan. He denied that they ever removed any items from the office pursuant to the Plan except the important papers from NEBT underwriting files. He disclaimed ever having referred to these NEBT underwriting files before returning them to Veco. According to Michails, before leaving Veco she used Veco files to prepare a list of Veco clients that "they were going to talk to after we left Veco." Babcock asserted that he never saw or removed a full client list.

Babcock admitted that he took steps to line up the NEBT business while still employed at Veco. During January of 1986, before being terminated, Babcock met with people involved with the various exchanges that made up NEBT to "see what their feelings were as to whether that could happen or not." Babcock and Tucker also met with the chief executive officer of the Commodities Future Self-Regulatory Group at a separate meeting, to which Babcock brought an underwriter. Babcock acknowledged that at these meetings he "expressed some concern as to what would happen to NEBT after we left," observed that the entire Veco staff responsible for NEBT was leaving, and that no one else at Veco knew anything about necessary NEBT servicing. Babcock prepared and Michails typed a handout for distribution at these meetings, which stated:

> "Bob Babcock, Jeanne Tucker and Pat Walker have made it known to certain members of the Chicago Board of Trade and the Chicago Mercantile Exchange *** that they will soon be terminating their employment with Veco Corporation. *** Babcock, Tucker and Walker were the only three employees of Veco Corporation who knew anything about the trust and/or its operations and these three individuals were the only employees of Veco Corporation having anything to do with the administration and proper service to the members covered by the trust. ***
>
> *  *  *
>
> *** Babcock, Tucker and Walker are also requesting that they be allowed through their company to fulfill the position as

administrators and the broker of record for the various programs currently covered by the [NEBT]."

Meanwhile, on January 27, 1986, Vear returned to the office from a two-week vacation. At 8 a.m. that morning he fired Babcock. Within an hour of Babcock's termination, Michails, Tucker, and Walker resigned. Only four employees and Vear remained at Veco. As defendants intended and predicted, no remaining Veco employee was experienced in administering the NEBT account. As a result of this disruption to NEBT, Veco lost approximately $100,000 during 1986, according to Vear.

Babcock testified that, starting the day after his termination, a number of Veco clients transferred their accounts from Veco to Babcock's corporation, CorMac. The switch-over clients included: Bell Chemical Company, by letter dated January 28, 1986; Chicago Mercantile Exchange, by letter dated January 28, 1986; J.J. Grundy, Incorporated, by letter dated January 31, 1986; John Nuveen & Company, by letter dated January 31, 1986; C & D Commodities, by letter dated January 31, 1986; Spiegel, Incorporated, by letter dated January 31, 1986; and Building Officials & Code Administrators International, by letter dated February 7, 1986. Babcock claimed he contacted these clients in person and by letter after his termination and did not make sales calls of any group customer for the purpose of obtaining a change in a broker of record letter before his termination. Defendants did not obtain any NEBT business served by Veco, Babcock asserted, and he has not contacted any NEBT members since his termination.

A group insurance purchaser ordinarily takes a careful, painstaking look at the insurance provider and analyzes the carrier, the benefits, and the premiums, according to Babcock. The John Nuveen business Babcock took from Veco for CorMac's benefit did not require such a procedure because it was the result of cultivating and entertaining the client while he was still a Veco officer. Further, in October of 1985, Babcock and a Veco employee discussed "Veco and how we fit in it and what our plans were for the future"; he denied offering the employee a job or discussing that he was thinking of starting his own company.

Veco sued defendants for an injunction, a temporary restraining order, and for breach of fiduciary duties. In an agreed order, defendants agreed temporarily to refrain from soliciting NEBT. The agreed order stated that defendants have returned all Veco's documents to Veco, including information removed or copied from Veco by Babcock

and Michails pursuant to the aforementioned Plan. Babcock returned all Veco documents before the parties executed the agreed order.

At trial, Veco requested a permanent injunction and argued that defendants breached their fiduciary duties. After a bench trial, judgment was entered for defendants on both counts. No bases were given for this ruling. Veco appeals.

## I

Veco initially contends that the circuit court's judgment as to defendants' breach of their fiduciary duties to Veco is contrary to the manifest weight of the evidence.

A court's decision will not be disturbed on appeal unless it is against the manifest weight of the evidence. (*In re Application of the County Treasurer* (1989), 131 Ill. 2d 541, 549, 546 N.E.2d 506.) A reviewing court will not overturn a circuit court's findings merely because it does not agree with the lower court or because it might have reached a different conclusion had it been the trier of fact. (*County Treasurer*, 131 Ill. 2d at 549.) It is not enough to show that there is sufficient evidence to support a contrary judgment (*People ex rel. Lauth v. Wilmington Coal Co.* (1949), 402 Ill. 161, 167, 83 N.E.2d 741; *Fleisher v. Lettvin* (1990), 199 Ill. App. 3d 504, 509, 557 N.E.2d 383), but where the evidence is uncontradicted and is not inherently unbelievable, a finding contrary to that evidence cannot stand (*Gold v. Ziff Communications Co.* (1989), 196 Ill. App. 3d 425, 433, 553 N.E.2d 404).

## A

In the absence of a contractual restrictive covenant, the improper taking of a customer list, or fraud, former employees may compete with their former employer and solicit former customers so long as there was no demonstrable business activity by the former employee before the termination of employment. (*Prudential Insurance Co. of America v. McCurry* (1986), 143 Ill. App. 3d 222, 227, 492 N.E.2d 1026.) In general, employees may plan, form, and outfit a competing corporation while still working for the employer, but may not commence competition. *Voss Engineering, Inc. v. Voss Industries, Inc.* (1985), 134 Ill. App. 3d 632, 635-36, 481 N.E.2d 63.

Corporate officers, however, stand on a different footing; they owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed. *Smith-Shrader Co. v. Smith*

(1985), 136 Ill. App. 3d 571, 577, 483 N.E.2d 283; see *Graham v. Mimms* (1982), 111 Ill. App. 3d 751, 760-61, 444 N.E.2d 549.

The law governing the right of former employees to compete is distinct from and irrelevant to a breach of fiduciary duty claim against officers. An officer's duty of loyalty is not inconsistent with his right to enter into competition with a former employer upon leaving such employment. (*Comedy Cottage, Inc. v. Berk* (1986), 145 Ill. App. 3d 355, 360, 495 N.E.2d 1006, citing *Voss*, 134 Ill. App. 3d at 635-37.) The resignation of an officer, however, will not sever liability for transactions completed after the termination of the party's association with the corporation of transactions which began during the existence of the relationship or were founded on information acquired during the relationship. *Comedy Cottage*, 145 Ill. App. 3d at 360, citing *H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285, 292, 379 N.E.2d 765.

■■ It is undisputed that Babcock solicited NEBT business for CorMac while still employed at Veco. He met with people involved with the various exchanges that made up NEBT to "see what their feelings were as to whether that could happen or not." At these meetings, he "expressed some concern as to what would happen to the NEBT after we left," and he also stated that the entire Veco staff responsible for NEBT was leaving and that no one left at Veco knew anything about NEBT's needs. Moreover, defendants prepared a handout, which specifically requested that they be given NEBT business, for distribution at these meetings. In addition, defendants implicitly admit pretermination solicitation of NEBT in their brief: "Babcock stopped soliciting NEBT business when he left Veco ***."

Defendants maintain that Veco has no valid complaint against them for soliciting NEBT because defendants did not obtain any NEBT business and there can be no cause of action where there is no injury or damages. (*Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 65, 253 N.E.2d 45.) Defendants' failure to obtain any NEBT business does not preclude a finding of breach of fiduciary duties, however. As shown by the record, defendants' efforts to obtain NEBT business are indeed relevant to the issue of injury to Veco and resultant damages, as discussed in point II of this opinion.

Veco contends that it was damaged by defendants' breach of fiduciary duties because it was left unable to service the NEBT account. All Veco's employees with experience in administering NEBT were asked by defendants to leave Veco and join CorMac. Vear testified that Veco lost approximately $100,000 as a result of the disruption; however, no further evidence of damages proffered by Veco was ad-

mitted at trial. To this charge, defendants first respond that there was no causal connection between their actions and Veco's loss of NEBT business because they never put into effect their plan to take NEBT with them and because they could have left Veco's employ at any time. Further, Veco might have lost NEBT business for other reasons, such as rate increases, normal fluctuations, and competition. Finally, defendants allege, Veco failed to present testimony of NEBT participants who left the plan because of a disruption in service; therefore, the circuit court could have applied the missing witness rule. *Board of Regents of Regency Universities v. Illinois Educational Labor Relations Board* (1991), 208 Ill. App. 3d 220, 233, 566 N.E.2d 963.

With respect to the group accounts, however, defendants' business Plan, a veritable "smoking gun," set forth the strategy of transferring some of Veco's group business to themselves. While a Veco officer, Michails prepared a CorMac prospect list of Veco clients, taken from Veco files. Significantly, shortly after defendants' departure from Veco, six Veco group clients executed broker of record letters transferring Veco's business to CorMac, although Babcock acknowledged that it took six or seven meetings over the course of several months to secure business from one account and that a group insurance purchaser in general takes a careful, painstaking look at the insurance provider and analyzes the carrier, the benefits, and the premiums before awarding that business to anyone. The circuit court could not disregard this evidence of pretermination solicitation from the loss of six group customers to CorMac within one to several days following Babcock's termination, contrary to the usual practice. As observed in *A B C Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1980), 90 Ill. App. 3d 817, 828, 413 N.E.2d 1299:

> "A review of the record reveals that the *effect* of these 'discussions' or 'solicitations' contributed to the success of defendants' walkout plan. We find especially persuasive of liability the uncontested fact that a large number of ABC's customers and personnel switched to Aeronautics simultaneously. Certainly, this could not have occurred absent defendants' prior careful planning." (Emphasis in original.)

That same analysis is applicable here, in light of the evidence showing defendants' active exploitation of their fiduciary positions to enhance their individual interests at the expense of their employer. See *Smith-Shrader*, 136 Ill. App. 3d at 577.

## B

■ Veco asserts that defendants breached their fiduciary duties to Veco by removing Veco documents including a customer list. Corporate officers breach their fiduciary duties where they use the company's confidential business information for the new business, either before or after their departure. (*Preferred Meal Systems, Inc. v. Guse* (1990), 199 Ill. App. 3d 710, 725, 557 N.E.2d 506, citing *Affiliated Hospital Products, Inc. v. Baldwin* (1978), 57 Ill. App. 3d 800, 806, 373 N.E.2d 1000.) Defendants argue their removal of the customer list and the NEBT underwriting files is irrelevant because the documents removed did not contain confidential or protected information, which was already well known to Babcock based upon his knowledge, acquaintances, and the overall experience he acquired at Veco. (See *Revcor, Inc. v. Fame, Inc.* (1967), 85 Ill. App. 2d 350, 357, 228 N.E.2d 742.) Veco has made no claim of confidentiality for the documents removed or copied by defendants and submitted no evidence in support of such a proposition. Accordingly, there was no legally cognizable breach of defendants' fiduciary duties with respect to these documents.

## C

■ Veco urges that defendants breached their fiduciary duties by hiring away Veco employees. Corporate officers are liable for breaching their fiduciary duties where, while still affiliated with the company, they solicit fellow employees to join a rival business or orchestrate a mass exodus of employees to follow shortly the officer's resignation from the company. (*Preferred Meal Systems*, 199 Ill. App. 3d at 725, citing *Unichem Corp. v. Gurtler* (1986), 148 Ill. App. 3d 284, 290, 498 N.E.2d 724.) Defendants do not respond to this claim. In the present case, it is undisputed that Babcock recruited Michails, Tucker, and Walker to join him prior to his termination; he also cautioned them not to tell Vear of their plans. At Babcock's direction and while still employed at Veco, Michails retrieved, copied, and typed various documents belonging to Veco for CorMac. While still employed at Veco, Tucker joined Babcock in a meeting where Babcock solicited NEBT members for CorMac. After Vear fired Babcock, Michails, Tucker, and Walker immediately resigned. This evidence is uncontradicted. Clearly, defendants secretly solicited Veco employees for CorMac and orchestrated a mass exodus of Veco's NEBT servicing employees to follow Babcock's resignation. Such conduct is a breach of

fiduciary duties. The circuit court's contrary determination is against the manifest weight of the evidence.

Defendants' reliance upon *Ellis & Marshall Associates, Inc. v. Marshall* (1973), 16 Ill. App. 3d 398, 306 N.E.2d 712, is misplaced. There, the court determined that defendant did not engage in any pretermination solicitation, but merely informed customers of his intention to leave the company and form a competing company (*Marshall*, 16 Ill. App. 3d at 403); here, defendants admitted they solicited NEBT business prior to their termination. Defendants made it appear that without them, Veco could not properly service their accounts. With respect to the hiring away of employees, in *Marshall* the actual date of the defendant's resignation was disputed; therefore, it is unclear whether the defendant approached the employees before or after his resignation. (See *Marshall*, 16 Ill. App. 3d at 400.) The evidence is undisputed in the case *sub judice* that Babcock recruited Michails, Tucker, and Walker to join him before his termination.

## D

■ Within its charge that defendants breached their fiduciary duties, Veco also claims that defendants conspired to destroy it and took such action during their employment at Veco. A plaintiff can recover for conspiracy when officers intentionally act in concert to breach their fiduciary duties and cause injury to their employer; no actual malice or ill will is required. (*A B C Trans National Transport*, 90 Ill. App. 3d at 826.) Veco points to the undisputed evidence that Babcock, Michails, and Walker agreed to leave Veco sometime in January 1986 to start a competing venture, and that Babcock cautioned the others not to disclose their plans to Vear. The evidence further reveals defendants' knowledge that their mass walkout would cripple Veco and sought to turn this assumption to their own advantage by advising Veco's customers that they were "concerned" about what would happen to NEBT after defendants' departure, that no one responsible for servicing NEBT would be left at Veco, and that no one else at Veco knew anything about the trust and "proper service to members covered by the trust." Such evidence could not be ignored. The circuit court's determination to the contrary is against the manifest weight of the evidence and must be reversed.

## II

Veco argues that the circuit court's denial of damages was against the manifest weight of the evidence.

## A

■ First, Veco claims it is entitled to recover the salary and other compensation it paid to Babcock and Michails during the time they breached their fiduciary duties to Veco. An employer may recover an employee's total compensation paid during the time period that an employee was breaching fiduciary duties owed the employer. (*A B C Trans National Transport*, 90 Ill. App. 3d at 838, citing *Vendo Co. v. Stoner* (1974), 58 Ill. 2d 289, 314, 321 N.E.2d 1.) The undisputed testimony shows that Babcock and Michails solicited NEBT business and other Veco employees in January of 1986, before they were terminated or resigned. At the least, Veco is entitled to the compensation it paid them during that time, whether they secured NEBT business or not.

## B

■ Next, Veco maintains it is entitled to an imposition of a constructive trust on commissions received by CorMac on six group accounts that defendants converted from Veco. A constructive trust may be imposed when an employee breaches his or her fiduciary duty by competing with his or her employer during employment. (*Hill v. Names & Addresses, Inc.* (1991), 212 Ill. App. 3d 1065, 1083, 1086, 571 N.E.2d 1085.) Further, the resignation of an officer will not sever liability for transactions completed after the termination of his or her association with the corporation if the transactions began during the existence of the relationship or were founded on information acquired during the relationship. *Comedy Cottage, Inc. v. Berk* (1986), 145 Ill. App. 3d 355, 360, 495 N.E.2d 1006; *H. Vincent Allen & Associates, Inc. v. Weis* (1978), 63 Ill. App. 3d 285, 292, 379 N.E.2d 765; see also 3 W. Fletcher, Private Corporations §860, at 275-78 (perm. ed. 1986).

Evidence demonstrating that defendants solicited these group clients before their termination from Veco, as discussed under point I, if properly considered, could have led to the imposition of a constructive trust and should be reconsidered upon remandment.

## C

Veco argues that the circuit court erred in excluding its evidence of lost profits. At trial, the circuit court refused to admit Veco's exhibits 17 through 25, which were summaries of business records offered to show Veco's lost profits. Upon defendants' objections, the circuit court denied admittance in evidence of these exhibits, apparently in the mistaken belief that Illinois law does not allow summaries to be

received in evidence. Defendants also objected on grounds that the summaries were not properly authenticated or probative.

■ Summaries may be admitted into evidence if the underlying records are voluminous and cannot be conveniently examined to extract the fact to be proved. (*Landmark Structures, Inc. v. F.E. Holmes & Sons Construction Co.* (1990), 195 Ill. App. 3d 1036, 1051, 552 N.E.2d 1336.) Defendants note that the documents summarized must be available in court or at least made available to the opposing party. (*In re Marriage of Kaplan* (1986), 149 Ill. App. 3d 23, 30, 500 N.E.2d 612.) Defendants claim that the underlying documents were not in court or made available to them when the exhibits were offered. The record is to the contrary. When Veco's counsel attempted to introduce such an exhibit into evidence at trial, Vear testified that the books and records of company were available for "inspection and examination" by defendants, if they wanted to look at them. Defendants never requested such an inspection.

The summaries also must overcome hearsay, authentication, and best evidence objections in order to be admitted into evidence. (*612 North Michigan Avenue Building Corp. v. Factsystem, Inc.* (1977), 54 Ill. App. 3d 749, 753, 370 N.E.2d 236.) Defendants claim the circuit court sustained their objections also because the exhibits were not properly authenticated; however, the parties agree that Vear testified to authenticate the data, stating that it was compiled by Veco's bookkeeper and then prepared by Veco's accountant. Defendants maintain that Vear's testimony was inadequate because he did not prepare the documents. Any competent witness who has seen original documents may testify concerning their authentication, however. (*In re Marriage of Westcott* (1987), 163 Ill. App. 3d 168, 176, 516 N.E.2d 566.) The proffered authentication was adequate as to exhibits 17 through 25.

The exhibits at issue additionally qualify as business records. Veco correctly notes that business records may be allowed into evidence if made in the regular course of business according to a regular business practice. (*Bass v. Washington-Kinney Co.* (1983), 119 Ill. App. 3d 713, 726-27, 457 N.E.2d 85.) The same testimony by Vear established at trial that exhibits 19, 20, 21, 23, 24, and 25 met these requirements. Defendants do not dispute this claim.

The circuit court should have allowed the summaries into evidence.

## D

■ As its final argument, Veco claims it is entitled to punitive damages and attorney fees. A decision by the circuit court to deny pu-

nitive damages will not be reversed absent an abuse of discretion. (*PCx Corp. v. Ross* (1991), 209 Ill. App. 3d 530, 539-40, 568 N.E.2d 311.) Here, the circuit court did not properly consider much of the evidence which had a bearing upon the sought after punitive damages and attorney fees. See *Hill v. Names & Addresses, Inc.* (1991), 212 Ill. App. 3d 1065, 1086, 571 N.E.2d 1085; *Smith-Shrader Co. v. Smith* (1985), 136 Ill. App. 3d 571, 580, 483 N.E.2d 283.

Upon remand, all the evidence related to the foregoing damages should be considered anew. Accordingly, we reverse judgment for defendants and we remand for further proceedings in consonance with this opinion.

Reversed and remanded with directions.

SCARIANO and DiVITO, JJ., concur.