THIRD DIVISION
September 27, 2006

No. 1-05-0597

| | | |
|---|---|---|
| COOPER LINSE HALLMAN CAPITAL MANAGEMENT, INC., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| THOMAS HALLMAN and JAMES McQUINN, | ) ) ) | No. 00CH13781 |
| Defendants-Appellees | ) ) ) | |
| (Hallman and McQuinn Capital Management, Inc., | ) ) ) | The Honorable Nancy J. Arnold, Judge Presiding. |
| Defendant). | ) | |

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Cooper Linse Hallman Capital Management, Inc., brought seven counts of corporate misconduct against defendants Thomas Hallman, James McQuinn and Hallman & McQuinn Capital Management, Inc. (H&M). At a bench trial, the trial court entered a directed finding on four of the counts. The court subsequently found for Hallman on plaintiff's allegation that he had breached his fiduciary duty as an officer, director and shareholder of plaintiff and on plaintiff's allegation that he had breached his fiduciary duty as a shareholder of plaintiff, a closely held corporation. The court additionally found for McQuinn on plaintiff's allegation that he had breached his duty of loyalty as an employee of plaintiff. On appeal, plaintiff contends that the trial court erred in holding Hallman and McQuinn to the fiduciary duty of a "general employee," rather than to the heightened fiduciary duty of a director or officer, and in holding

that Hallman and McQuinn did not breach their heightened fiduciary duties.

Plaintiff is an investment advisor specializing on "market timing" investments. Plaintiff was founded in 1993 by Don Linse and Lori Cooper. In 1994, plaintiff hired Hallman, who brought with him approximately 100 clients from his former place of employment. Hallman purchased 20% of the voting shares of plaintiff, leaving the remaining 80% of the shares split evenly between Linse and Cooper, and was named chief financial officer and vice president of plaintiff. When Hallman was hired, the parties did not execute a written confidentiality agreement. At trial, Linse testified that an oral confidentiality agreement was entered. Hallman denied that allegation. Hallman's duties included maintaining customer relations, answering phones and soliciting clients.

In 1996, plaintiff hired McQuinn. Again, the parties did not enter a written confidentiality agreement. While Linse maintained that an oral agreement was entered, McQuinn disagreed. McQuinn's duty was to maintain customer relations.

The testimony presented at trial showed that Hallman was charged with managing plaintiff's office staff and with paying office bills. While Hallman would advise Linse and Cooper concerning what he thought were appropriate salaries and bonuses for plaintiff's employees, Hallman's suggestions were never followed. According to all witnesses, ultimately, Linse and Cooper made all decisions concerning plaintiff, including all hiring and firing decisions.

In 1998, the parties began researching the effectiveness of a new market timing methodology known as a "sector fund." Plaintiff established a sector fund with a firm called

Rydex to test the new methodology. In 1999, Hallman, McQuinn, Linse and Cooper each also opened personal Rydex funds. McQuinn volunteered to trade the corporate Rydex fund and testified that he never hid its goings on, nor the happenings of his own or the other parties' personal Rydex funds from Linse and, in fact, spoke to Linse about the funds "most days."

Plaintiff's clients' assets were held in trust by Independent Trust Corporation (Intrust). In April 2000, it was revealed that Intrust had a multi-million dollar cash shortage. As a result, a civil receivership action was initiated against Intrust and all of Intrust's assets were frozen, including plaintiff's clients' accounts. Accordingly, plaintiff was unable to pay its employees and plaintiff's clients were unable to withdraw funds from their accounts.

According to Linse's testimony, he began negotiations with Intrust president Gary Bertacchi in April 2000, for plaintiff to lease Bertacchi office space and to establish a new in-house trust company. Hallman and McQuinn testified that in April 2000, Linse informed them that he was hiring Bertacchi. Hallman and McQuinn testified that it was then that they began to take steps to establish a competing market timing firm.

In anticipation of their competing firm, in June and July 2000, Hallman and McQuinn executed a lease for office space, bought office equipment and filed the H&M articles of incorporation with the Secretary of State. Hallman also copied from plaintiff prospect lists, customer account spreadsheets and customer mailing labels, among other documents. Hallman and McQuinn resigned on September 1, 2000, taking the copied documents with them. Shortly thereafter, they were certified as investment advisors and registered with the Securities and Exchange Commission. Hallman and McQuinn sent announcements of their departure to

plaintiff's clients in which they detailed their personal Rydex sector funds track records since 1999.

After Hallman's and McQuinn's resignations, plaintiff hired a computer forensics expert who discovered that the H&M business plan had been saved to plaintiff's computers and that Hallman and McQuinn had experimented with fonts for an H&M advertisement on the computers.

In order to obtain business, plaintiff relied on solicitors. One such solicitor, ProFutures, had referred about 30% of plaintiff's business. In November 2000, ProFutures became concerned about the service provided by plaintiff. Later that year, it sent its clients letters advising them to suspend trading in their accounts with plaintiff. In March 2001, the relationship between ProFutures and plaintiff was terminated. Meanwhile, in February 2001, the newly established H&M had entered an agreement with ProFutures whereby it would pay ProFutures 10% more in commission than plaintiff had paid ProFutures. While they were still employed by plaintiff, in the summer of 2000, Hallman and McQuinn had met with a ProFuture employee several times. Hallman and McQuinn denied soliciting ProFuture's business for their new venture and testified that Linse had actually been invited and had arrived late to at least one of these meetings.

Plaintiff filed suit on September 20, 2000. On December 20, 2001, plaintiff filed a second amended complaint alleging seven counts of corporate misconduct. The case proceeded to a bench trial. After plaintiff had rested, the trial court granted a directed finding on counts I, V, VI and VII of plaintiff's second amended complaint. At the end of trial, the court found for

Hallman on count II, alleging that he had breached his fiduciary duty as an officer, director and shareholder of plaintiff, and on count III, alleging that he breached his fiduciary duty as a shareholder of plaintiff, a closely held corporation. The court found for McQuinn on count IV, alleging that he breached his duty of loyalty as an employee of plaintiff. Plaintiff appealed the court's findings on counts II and IV. Accordingly, H&M is not a party to this appeal.

Plaintiff first contends that the trial court erred in treating Hallman and McQuinn as general employees, rather than as officers and directors that owed a heightened fiduciary duty to plaintiff. As Hallman and McQuinn point out, the trial court did not err in this respect.

With regard to Hallman, contrary to plaintiff's contention, the court specifically found that Hallman owed plaintiff a heightened fiduciary duty because he was a shareholder, director and officer of plaintiff.

With regard to McQuinn, plaintiff did not allege in the trial court that he owed the heightened fiduciary duty of an officer or director. Instead, it argued that McQuinn was an employee who owed a fiduciary duty of loyalty. Because this contention was not raised in the trial court, it is waived on appeal. See Cangemi v. Advocate South Suburban Hospital, 364 Ill. App. 3d 446, 466 (2006), quoting Central Illinois Public Service Co. v. Allianz Underwriters Insurance Co., 244 Ill. App. 3d 709, 720 (1993) (" 'It is well settled that issues not raised in the trial court are generally waived on appeal' "). Waiver aside, it is irrelevant whether McQuinn owed the heightened fiduciary duty of an officer or a director to plaintiff because, as discussed below, even under that standard, the trial court did not err in finding that Hallman's and McQuinn's actions did not constitute a breach of that duty.

1-05-0597

Former employees may compete with their former employer and solicit former customers as long as they do not do so before the termination of their employment. Veco Corp. v. Babcock, 243 Ill. App. 3d 153, 160 (1993). Moreover, while still working for an employer, employees may plan, form and outfit a competing corporation so long as they do not commence competition. Veco, 243 Ill. App. 3d at 160. "Corporate officers, however, stand on a different footing; they owe a fiduciary duty of loyalty to their corporate employer not to (1) actively exploit their positions within the corporation for their own personal benefit, or (2) hinder the ability of a corporation to continue the business for which it was developed." Veco, 243 Ill. App. 3d at 160. Under Illinois law:

> "Officers and directors have been found to have breached their fiduciary duties
>
> when, while still employed by the company, they (1) fail to inform the company
>
> that employees are forming a rival company or engaging in other fiduciary
>
> breaches [citation]; (2) solicit the business of a single customer before leaving the
>
> company [citation]; (3) use the company's facilities or equipment to assist them in
>
> developing their new business [citation]; or (4) solicit fellow employees to join a
>
> rival business." Foodcomm International v. Barry, 328 F.3d 300, 303 (7th Cir.
>
> 2003).

Preferred Meal Systems, Inc. v. Guse, 199 Ill. App. 3d 710, 725 (1990). Illinois courts have also found that officers and directors have breached their fiduciary duties when they "used the company's confidential business information for the new business, either before or after [their] departure [citation]; or *** orchestrated a mass exodus of employees shortly after [their]

6

resignation from the company." Preferred Meal Systems, 199 Ill. App. 3d at 725. The applicable standard of review is whether the trial court's finding that Hallman and McQuinn did not breach their fiduciary duties to plaintiff was against the manifest weight of the evidence. Dowd & Dowd, Ltd. v. Gleason, 352 Ill. App. 3d 365, 373 (2004).

Plaintiff asserts that Hallman and McQuinn breached their fiduciary duties when they (1) failed to inform plaintiff while still in its employ that they were planning to form a competing corporation; (2) solicited fellow employees (each other) to join the competing corporation; (3) solicited ProFuture's business prior to their resignation; (4) used plaintiff's computer to type a business plan and advertisements; (5) used confidential information about plaintiff's customers to outfit their competing corporation; and (6) usurped plaintiff's corporate opportunity to exploit its success with the Rydex sector funds. The evidence unequivocally shows that Hallman and McQuinn did commit several of the above allegations; in particular, they failed to inform plaintiff of their plans to form a rival corporation, conspired with one another to form a rival corporation and used plaintiff's computer to type a business plan and advertisements. However, after reviewing all of the facts presented in this case, we cannot say that the trial court's determination that Hallman and McQuinn's actions fall short of a breach of their fiduciary duties to plaintiff was against the manifest weight of the evidence because the evidence proved that they neither exploited their positions with plaintiff for their own benefit nor hindered the ability of plaintiff to continue business.

First, we reject plaintiff's contention that the trial court erred in finding for Hallman and McQuinn when they solicited ProFutures' business prior to resigning and used confidential

information about plaintiff's clients to outfit their new corporation. Concerning ProFuture's business, the testimony presented at trial showed that Hallman and McQuinn met with a ProFutures employee during the summer of 2000 but that Linse was invited to at least one of those meetings. There was no evidence presented that Hallman and McQuinn actually solicited ProFutures' business. In fact, Hallman and McQuinn testified that they did not solicit ProFutures' business. Accordingly, we cannot say that the trial court's determination on this issue was contrary to the manifest weight of the evidence. Concerning the confidentiality of plaintiff's client information, the evidence showed that neither Hallman nor McQuinn signed a written confidentiality agreement. While Linse testified that the parties entered an oral confidentiality agreement, Hallman and McQuinn testified to the contrary. Because the court was in the best position to assess the credibility of the witnesses and is charged with resolving any conflicts in the evidentiary record (see Williams v. Cahill, 258 Ill. App. 3d 822, 825 (1994)), we cannot say that its determination that no confidentiality agreement existed was contrary to the manifest weight of the evidence.

Moreover, we agree with the trial court's determination that plaintiff did not demonstrate that Hallman and McQuinn usurped its corporate opportunity to capitalize on its success with its Rydex sector fund. Certainly, more than one corporation may offer that form of investment and, while Hallman and McQuinn may have advertised their personal Rydex sector funds' successes as a lure to potential customers to their new corporation, plaintiff offered no evidence that it cannot also capitalize on its success with its Rydex sector fund.

Concerning the remaining allegations, clearly this case is distinguishable from the

extreme cases of fiduciary misconduct to which plaintiff compares it. In <u>Unichem Corp. v. Gurtler</u>, 148 Ill. App. 3d 284 (1986), the defendant, the former president and a member of the board of directors of the plaintiff chemical company, appealed summary judgment entered for the plaintiff on its claim that the defendant had breached his fiduciary duty. The defendant's son had been a salesperson employed by the plaintiff. While his father remained the plaintiff's president and a member of the board, the defendant's son resigned and established a rival chemical company. The defendant did not inform the plaintiff of his son's resignation or plans to form a competing company until a month after the fact. Moreover, without disclosing to the plaintiff his actions, the defendant encouraged other of the plaintiff's employees to go to work for his son's rival company, personally approved five separate sales of the plaintiff's goods to his son at a drastically reduced price, knowing that his son would resell the products to the plaintiff's regular customers, and obtained a loan in his name to be distributed to his son's company. The defendant was also aware, but did not inform the plaintiff, that his son and wife were soliciting the plaintiff's employees to join the rival company and that his wife had taken several of the plaintiff's labels and was using them to make the rival company's labels. The defendant provided his wife " 'technical input' " in this regard. <u>Unichem</u>, 148 Ill. App. 3d at 288. Eventually, the defendant resigned from his position with the plaintiff and assumed the position of president of his son's company. The appellate court held that the defendant had breached his fiduciary duties to the plaintiff because he had failed to disclose facts which threatened the plaintiff's existence and had, in fact, intentionally hidden such developments. Accordingly, the appellate court affirmed the trial court's summary judgment order.

In <u>Vendo Company v. Stoner</u>, 58 Ill. 2d 289 (1974), the trial court entered judgment for the plaintiff, a vending machine manufacturer, against the defendant, a former officer and director of the plaintiff, on the plaintiff's claim that the defendant had breached a noncompetition covenant. On appeal in the supreme court, the court noted that it was clear that the defendant had violated his fiduciary duties during his employment as an officer and director of the plaintiff. During that period, the defendant, without disclosing such actions to the plaintiff, had contributed substantial personal funds to the development of a superior vending machine that would compete with that manufactured by the plaintiff. The defendant also represented the plaintiff in its attempts to purchase the design of the new vending machine. The court concluded that the defendant

> "had a foot in each camp. Not only did his undisclosed individual interest in controlling the futher development and ultimately the manufacture and sale of the [superior machine] create the possibility of his taking an unfair advantage of plaintiff, but the evidence gives strong indication that he actually misled plaintiff while he was purportedly acting as plaintiff's agent with regard to plaintiff's possible acquisition of the [superior machine]." <u>Vendo</u>, 58 Ill. 2d at 304.

In <u>ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.</u>, 62 Ill. App. 3d 671 (1978), the plaintiff, a freight forwarding company, appealed the trial court's refusal to enjoin defendants, the former president and vice presidents of the plaintiff's subsidiary, and the competing company they had established from soliciting or serving its former customers. The evidence showed that, while employed by the plaintiff, the defendants set out to establish a rival

freight forwarding company. To this end, the defendants invested in the new corporation, obtained the services of a cartage firm which began making deliveries for the new corporation and met with the plaintiff's customers in an attempt to obtain their commitment to the new corporation. The defendants encouraged the plaintiff's staff members to come to work for the rival corporation, telling them that the plaintiff's subsidiary would soon become insolvent and that they would consequently be unemployed and that all of the plaintiff's major accounts would be transferred to the rival corporation. The defendants further organized a multistate massive walkout of the plaintiff's employees who had committed to working for the rival corporation. The defendants encouraged the plaintiff's employees to use the plaintiff's facilities, funds and personal property to prestamp the rival corporation's air bills, furnish the rival corporation with office supplies and airline containers and prepare the new corporation's daily reports. The appellate court held that these actions evidenced a clear breach of the defendant's fiduciary duties and, therefore, the injunction was proper.

The case at bar is also distinguishable from Foodcomm, a closer case of fiduciary misconduct. In Foodcomm, the district court granted the plaintiff, an importer of chilled Australian beef, an injunction against the defendants, the plaintiff's former employees who were held to the heightened fiduciary duty of directors or officers, from providing service to the plaintiff's former customer. While employed by the plaintiff, one of the defendants had been assigned to " 'smooth *** over' " a dispute between the plaintiff and one of its largest customers. Foodcomm, 328 F.3d at 302. The customer indicated to the defendant that it would no longer do business with the plaintiff; however, the defendant failed to relate this information to the

plaintiff. Instead, the defendants contacted the customer to inquire whether it would be interested in their services. The customer requested a written business plan for a new business that would compete with the plaintiff's, which the defendants prepared on computers and personal digital assistants owned by the plaintiff. After the defendants resigned, their new competing business began operating as a division of the customer's company. On appeal, the Seventh Circuit found that the injunction was proper because the plaintiff was likely to succeed on its claim that the defendants had breached their fiduciary duties. The court reasoned that the defendant was

> "privy to the collapse of negotiations between [the plaintiff] and [its customer] regarding the redistribution deal and offered to 'smooth things over.' The evidence adduced at the hearing supports the finding that instead of 'smoothing things over,' [the defendant] conspired with [his codefendant] to present [the customer] with a business plan to create [a customer-owned] entity that would provide the same services as were already being provided by [the plaintiff], and directly compete with [the plaintiff]. Such efforts to actively exploit their positions within [the plaintiff] for their own personal benefits, and to hinder [the plaintiff's] ability to conduct its business with [the customer], if proved at trial, constitute a breach of fiduciary duty." Foodcomm, 328 F.3d at 304.

The court further noted that a finding of breach would be supported by the facts that the defendants did not inform the plaintiff of their intentions to form a rival company and that they used the plaintiff's property to write their business plan.

12

1-05-0597

In this case, Hallman and McQuinn began planning and, in fact, incorporated a competing business while still employed by plaintiff. However, they did not solicit business for their new corporation or begin competing with plaintiff until after they had resigned. Though, as in the above-discussed cases, Hallman and McQuinn did not inform plaintiff of their intentions to create a competing corporation and may have typed their new business plan and experimented with advertisement fonts on plaintiff's computers, simply put, their conduct did not rise to the level of a breach of their fiduciary duties because they neither exploited their positions for their personal benefit and to the detriment of plaintiff nor impeded plaintiff's ability to do business. Unlike in Unichem and Vendo, Hallman and McQuinn did not actively invest in a rival company, taking advantage of benefits to which they, as fiduciaries to plaintiff, were entitled to insure the success of that rival company. Nor did Hallman and McQuinn mislead plaintiff about their actions, impeding plaintiff's ability to do business, as in Vendo. Unlike in ABC, Hallman and McQuinn did not use and steal property belonging to plaintiff in order to operate its rival business nor did their new corporation actually begin doing business while they were still employed by plaintiff. Finally, unlike in Foodcomm, while employed by plaintiff, Hallman and McQuinn did not actively exploit their position as employees, using their contacts with plaintiff's customers, to establish a rival business. Moreover, their actions in creating their new corporation did not interfere with plaintiff's relationships with its customers nor did they impede plaintiff's ability to conduct its business, as occurred in Foodcomm. Hallman and McQuinn simply did not participate in the monkey business participated in by the defendants in the discussed cases. To hold that Hallman's and McQuinn's actions were a breach of their fiduciary

13

duties would be to virtually prevent all officers and directors from seeking new employment prior to resigning from their current positions.

For these reasons, we affirm the judgment of the trial court.

Affirmed.

THEIS, P.J., and KARNEZIS, J., concur.