SECOND DIVISION
MARCH 31, 2010

1-08-2936

| | | |
|---|---|---|
| ENTERPRISE RECOVERY SYSTEMS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 06 L 7643 |
| | ) | |
| RHONDA SALMERON, | ) | Honorable |
| | ) | Bill Taylor, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE CUNNINGHAM delivered the opinion of the court:

The defendant, Rhonda Salmeron (Salmeron), appeals from the entry of summary judgment for the plaintiff, Enterprise Recovery Systems, Incorporated (Enterprise), by the circuit court of Cook County. The circuit court awarded Enterprise $150,000 plus unspecified costs in Enterprise's lawsuit against Salmeron for fraud in the inducement and breach of her duty of loyalty to Enterprise, her former employer. On appeal, Salmeron asserts that the circuit court erred when, as a sanction for the repeated contumacious behavior of one of her lawyers, the court barred Salmeron from presenting any evidence supporting her defense or her counterclaim. Salmeron also contends that Enterprise's pleadings did not establish the elements for fraud in the inducement, and did not establish that Salmeron owed or breached a duty of loyalty to Enterprise. Finally, Salmeron contends that the circuit court erred in failing to grant her postjudgment "emergency motion" to vacate the judgment against her and dismiss the lawsuit, based on Salmeron's alleged immunity under section

15 of the Citizen Participation Act (735 ILCS 110/15 (West 2008)). We affirm the judgment of the circuit court of Cook County.

BACKGROUND

Salmeron was Enterprise's general manager and director of operations from July 12, 1998 until she was fired on July 31, 2002. Enterprise is in the business of the recovery and resolution of delinquent student loans. Enterprise also provides third-party service on loan accounts for the United States Department of Education (Department of Education). After Salmeron was fired by Enterprise, she sued Enterprise and its president, Sam Tornatore, for sexual harassment. In March of 2004, the parties settled the dispute, with Salmeron signing a general release of claims against Enterprise and Tornatore in return for the payment to her of $300,000.

The release stated in pertinent part that in consideration of the $300,000 payment, Salmeron forever discharged and released Enterprise from:

> "all actions [and] *** claims ****relating in any way to events*
>
> *occurring prior to and including the date of execution of the*
>
> *Agreement *** growing out of or related in any way *** to* all known
>
> and unknown *** damages or consequences relating to [Salmeron's]
>
> *employment* [*by Enterprise*]." (Emphasis added.)

The money was paid to Salmeron in installments and the final payment was made on April 15, 2005.

Less than four months after that final payment was made, Salmeron brought a *qui tam*[1] lawsuit in federal court against Enterprise on behalf of the federal government and herself. *Qui tam* lawsuits typically allege that an individual or entity has defrauded the government. They are brought by a private individual on behalf of the government, although the government may choose to intervene in the action and carry the litigation forward in lieu of the individual plaintiff. In that event, the individual plaintiff is entitled to a share of any funds recovered from the wrongdoer by the government. Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 768-70, 146 L. Ed. 2d 836, 842-44, 120 S. Ct. 1858, 1860-62 (2000). In paragraph one of her *qui tam* lawsuit, Salmeron alleged that damages and penalties assessed against Enterprise, by her estimate, would amount to over $8 million. Salmeron's complaint alleged that Enterprise had submitted false statements, false claims, and false records to the Department of Education in violation of the False Claims Amendments Act of 1986 (31 U.S.C. §§3729 through 3732 (2000)). Salmeron's complaint also stated that during her employment with Enterprise, she discovered some of these allegedly wrongful acts by Enterprise employees, although she never notified anyone at Enterprise about the wrongdoing during her employment. Salmeron subsequently added several other corporations and one individual as defendants in the *qui tam* lawsuit.

The *qui tam* lawsuit was initially dismissed because of the contumacious and dilatory conduct

---

[1] An abbreviation of the Latin phrase, "*qui tam pro domina rege quam pro se ipso in hac parte sequitor*," which is translated as "[one] who pursues this action on our Lord the King's behalf as well as his own." Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 768 n. 1, 146 L. Ed. 2d 836, 843 n. 1, 120 S. Ct. 1858, 1860 n.1 (2000).

of one of Salmeron's lawyers, who, over a period of three years, continually failed to meet discovery deadlines and filing deadlines, and failed to appear at scheduled status conferences. The federal district court dismissed the lawsuit because of this behavior, but then reinstated the lawsuit with the admonishment to the lawyer in question that any further misbehavior would have severe consequences. The same lawyer was later revealed to have leaked, to a Web site specializing in publishing leaked documents, a confidential agreement entered into by Enterprise and two of the other defendant corporations in the pending *qui tam* lawsuit. The lawyer leaked this document in direct breach of a confidentiality agreement with the three corporations that were parties to the agreement. The federal district court then dismissed Salmeron's *qui tam* lawsuit with prejudice, ascribing the lawyer's behavior to Salmeron. That dismissal was upheld on appeal on the same basis. Salmeron v. Enterprise Recovery Systems, Inc., 579 F.3d 787 (7th Cir. 2009). In its opinion, the United States Court of Appeals for the Seventh Circuit also rejected Salmeron's claim that the dismissal would harm the interests of the federal government. The federal court of appeals noted that the federal government chose not to intervene in the *qui tam* lawsuit, despite its statutory right to do so. Salmeron, 579 F. 2d at 797-98. It is noteworthy that the federal government regularly intervenes in meritorious *qui tam* lawsuits.

In the *qui tam* lawsuit, Enterprise had filed a cross-claim against Salmeron for fraud in the inducement and breach of fiduciary duty. It also asserted an affirmative defense based on the release signed by Salmeron when she settled her sexual harassment lawsuit against Enterprise and Tornatore. The federal district court found that this defense was not "a predicate for dismissal" of Salmeron's lawsuit. However, two additional events occurred. First, at the federal district court's suggestion,

4

Enterprise withdrew its cross-claim against Salmeron and instead filed this lawsuit in the circuit court of Cook County, making the same allegations against Salmeron as previously made in the federal case. Second, Salmeron's *qui tam* lawsuit was dismissed with prejudice.[2]

The instant lawsuit now on appeal before us was filed by Enterprise on July 20, 2006. In the lawsuit, Enterprise alleged that Salmeron had committed fraud in the inducement against Enterprise and had breached her duty of loyalty to Enterprise. Enterprise alleged that Salmeron committed fraud by signing a general release of liability while knowing that she had uncovered evidence which purportedly showed that Enterprise had defrauded the Department of Education and which she planned to use as one basis for filing a *qui tam* lawsuit against Enterprise in federal court. Enterprise alleged that Salmeron had breached a duty of loyalty which she owed to Enterprise by failing to disclose to Enterprise the evidence of fraud that some Enterprise employees had defrauded the Department of Education.

Salmeron filed a five-count counterclaim against Enterprise in the circuit court lawsuit. But during the course of pretrial activities in the lawsuit, Salmeron was sanctioned because of contumacious behavior by her trial lawyer. This is the same lawyer who represented Salmeron in the *qui tam* lawsuit, in which his misconduct also resulted in sanctions against Salmeron. The lawyer and his law firm represented Salmeron in the circuit court lawsuit filed against her by

---

[2]No issue of *res judicata* or *collateral estoppel* was raised by any of the parties with respect to the effect of the federal dismissal on any claims or cross-claims in the State lawsuit.

Enterprise and, initially, on appeal before this court.[3] It was the behavior of this lawyer, as the case progressed in the circuit court of Cook County, which prompted the trial court to bar Salmeron from presenting any evidence in support of her defense or her counterclaim. That lawyer repeatedly failed to answer Enterprise's discovery requests, including requests for admission, even when ordered to do so by the trial court. The lawyer also failed to appear at several hearings scheduled by the trial court. As a consequence of these cumulative actions in violation of the court's orders, and pursuant to Supreme Court Rule 219 (134 Ill. 2d R. 219), the trial court barred Salmeron from presenting any evidence  in support of her defense or her counterclaim. Enterprise then moved for summary judgment on both counts of its complaint. Enterprise's motion for summary judgment was supported by an affidavit of Enterprise's president, Sam Tornatore. In his affidavit, Tornatore stated that in the *qui tam* lawsuit, Salmeron had produced Enterprise company log reports purporting to document her claim that certain employees of Enterprise were engaged in a pattern or practice of falsifying billing to the Department of Education by claiming telephone calls and skip trace activities which had not occurred. Tornatore's affidavit stated that these log reports were the property of Enterprise and must have been stolen by Salmeron while she was employed by Enterprise. Copies of the reports were attached as exhibits to Enterprise's motion for summary judgment. Tornatore also stated that by failing to alert him to these alleged activities by Enterprise employees, Salmeron deprived Enterprise of the opportunity to stop the alleged improper activities. Tornatore further asserted that in making the full payment of $300,000 to Salmeron, Enterprise and he had relied on Salmeron's

---

[3]During the course of this appeal, we granted the motion of the lawyer and his law firm to withdraw from representing Salmeron on appeal.

representations in the release which she signed.

As additional support for its summary judgment motion, Enterprise appended as an exhibit its requests for admission, which Salmeron had never answered. As Salmeron concedes on appeal, the failure to answer requests for admission meant that all factual statements in the requests were deemed to be admitted by Salmeron. 134 Ill. 2d R. 216; Robbins v. Allstate Insurance Co., 362 Ill. App. 3d 540, 542-43, 841 N.E.2d 22, 25 (2005). Thus, Salmeron admitted the following facts. Before signing the release in settlement of the sexual harassment lawsuit against Enterprise and Tornatore, Salmeron believed, and told her lawyer, that Enterprise was submitting false claims, false statements, and false records to the Department of Education. Before signing the release, Salmeron gathered documentation from Enterprise to support this belief and provided her lawyer with that documentation. When she signed the release, Salmeron did not intend to release all claims arising from her employment with Enterprise, as the release stated she was doing. She knew that she would be bringing a *qui tam* lawsuit against Enterprise. After receiving the final payment required by the release, Salmeron contacted the Department of Education about her belief that Enterprise was submitting false claims, false statements, and false records. During her employment with Enterprise, Salmeron never notified Enterprise's president, Sam Tornatore, about her belief that certain employees of Enterprise were submitting false claims, false statements and false records to the Department of Education.

Salmeron did not respond to Enterprise's motion for summary judgment, despite a briefing schedule ordered by the trial court. On May 1, 2008, the trial court granted Enterprise's motion for summary judgment on both counts of its complaint: fraud in the inducement and breach of

Salmeron's duty of loyalty to Enterprise. A prove-up hearing was held on June 2, 2008, to determine damages, and the trial court awarded Enterprise $150,000 in damages, plus unspecified costs. Salmeron has not included a transcript of that hearing in the record on appeal to this court. On September 19, 2008, Salmeron filed an "emergency motion" in the trial court to dismiss the circuit court lawsuit, asserting for the first time that the Citizen Participation Act (735 ILCS 110/15 (West 2008)) granted her immunity from liability for filing the *qui tam* lawsuit and also asserting that her immunity extended to the lawsuit filed against her by Enterprise in the circuit court of Cook County. The trial court denied that motion. On September 25, 2008, the trial court entered a final and appealable order on the summary judgment entered in favor of Enterprise. On that date the court also granted Enterprise's motion to dismiss all of the remaining counts of Salmeron's counterclaim. On appeal to this court, Salmeron has not sought to overturn the dismissal of her counterclaim but rather focuses on the court's imposition of sanctions against her and its entry of summary judgment for Enterprise. Salmeron filed a timely appeal in this court from the judgment of the circuit court of Cook County.

## ANALYSIS

We first consider whether the trial court erred in the sanctions it imposed on Salmeron for the conduct of her trial lawyer. The imposition of sanctions is a matter left primarily to the discretion of the trial court, and only upon a showing of clear abuse of that discretion will the trial court's decision be overturned on appeal. Illinois case law documents the great power placed in a trial court's hands to enforce its authority with respect to contumacious behavior by a party or the party's lawyer. Lavaja v. Carter, 153 Ill. App. 3d 317, 323-24, 505 N.E.2d 694, 698-99 (1987) (no

8

abuse of discretion in striking the defendant's pleadings and entering a default judgment against him because he failed to comply with the trial court's orders and discovery rules); In re Marriage of Gluszek, 168 Ill. App. 3d 987, 992, 523 N.E.2d 126, 129 (1988) (trial court did not abuse its discretion by striking the defendant's pleadings and barring his testimony because the defendant repeatedly failed to respond to interrogatories); Smith v. Black & Decker (U.S.), Inc., 272 Ill. App. 3d 451, 460-61, 650 N.E.2d 1108, 1115-16 (1995) (no abuse of discretion by the trial court in barring the testimony of witnesses who were not disclosed in a timely fashion).

The record establishes that Salmeron's trial lawyer repeatedly and without explanation failed to respond to Enterprise's requests for discovery and requests for admission, even when ordered to respond by the trial court. The lawyer did not answer, object, or request an extension of time to respond to any of Enterprise's requests. The lawyer also, without explanation, failed to appear for hearings scheduled by the trial court. As Enterprise argues, these actions by Salmeron's trial lawyer prevented Enterprise from preparing for and properly prosecuting its lawsuit. On appeal to this court, Salmeron's briefs have failed to disclose any satisfactory explanation for the behavior of her trial lawyer. As we have noted, this same type of conduct, by this same lawyer, resulted in the dismissal of Salmeron's *qui tam* lawsuit in federal court. Given the broad discretion afforded to trial courts, we find no abuse of discretion in the trial court's ruling that barred Salmeron from presenting any evidence in her defense or in support of her counterclaim.

Turning to the entry of summary judgment in favor of Enterprise, our review is *de novo*. Bagent v. Blessing, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007). Upon examination of the pleadings, depositions, and admissions, if no question of material fact exists, then we must determine

whether the movant is entitled to judgment as a matter of law. Outboard Marine Corp. v. Liberty Mutual Insurance Co., 154 Ill. 2d 90, 102, 607 N.E.2d 1204, 1209 (1992); Gaston v. City of Danville, 393 Ill. App. 3d 591, 601, 912 N.E.2d 771, 779-80 (2009). In this case, the trial court found that Enterprise had sufficiently alleged that Salmeron committed fraud in the inducement. The elements of that tort are: a false representation of material fact, made with knowledge or belief of that representation's falsity, and made with the purpose of inducing another party to act or to refrain from acting, where the other party reasonably relies upon the representation to its detriment. Phil Dressler & Associates, Inc. v. Old Oak Brook Investment Corp., 192 Ill. App. 3d 577, 584, 548 N.E.2d 1343, 1347 (1989). Enterprise alleged that Salmeron committed fraud in the inducement by entering into a purported release of all her claims against Enterprise and Tornatore which arose out of her employment with Enterprise. At the same time, she knew that she had gathered information against Enterprise in support of a planned *qui tam* lawsuit in federal court. She held this information in confidence and did not mention it until after reaching a settlement agreement with Enterprise and Tornatore. Four months after receiving the final payment pursuant to the settlement agreement, which included a release of all future claims against Enterprise, Salmeron did indeed file a *qui tam* lawsuit against Enterprise.

Salmeron's admissions establish that she signed the release agreement with Enterprise with no intention of honoring it. Furthermore, she had in her possession, at the time of the settlement agreement, documentation which purportedly established fraudulent billing practices by Enterprise employees. She signed the release agreement knowing that she would shortly bring a *qui tam* lawsuit against Enterprise in federal court. Under these facts, we find that Enterprise's complaint

10

sufficiently alleged facts supporting fraud in the inducement. By signing the release, Salmeron knowingly misrepresented that she would not make any future claims against Enterprise which were related to her employment with Enterprise. Specifically, as we have previously noted, the agreement stated that it covered:

> "all actions [and] *** claims *** *relating in any way to events*
> *occurring prior to and including the date of execution of the*
> *Agreement *** growing out of or related in any way *** to* all known
> and unknown *** damages or consequences relating to [Salmeron's]
> *employment* [*by Enterprise*]." (Emphasis added.)

This induced Enterprise to pay Salmeron $300,000 in reasonable reliance on her agreement to release Enterprise from all future claims related to her employment with Enterprise.

We disagree with any assertion that the parties did not intend that this release cover possible future *qui tam* actions by Salmeron. We also disagree that the release only applied to future actions or claims by Salmeron arising out of her allegations of sexual harassment related to her employment. Any other conclusion is pure speculation, which is contradicted by the broad language of the release itself. The release lists a number of possible actions which are specifically covered by the release, many of which relate to Salmeron's claim of sexual harassment. But the specific language of the release also states, at the beginning of the listing of claims for relief which are included, that the claims are listed "without in any way limiting the generality" of the broad terms of the release. The clear terms of the release state that it applies to "all actions [and] *** claims ***relating in any way *** to [Salmeron's] employment [by Enterprise]." The more natural construction of this broad

language and the list of possible actions is that Enterprise wished to foreclose Salmeron from bringing *any* future action against it arising out of her employment. Indeed, as established by Salmeron's admissions, she gathered the information for the *qui tam* complaint while she was employed by Enterprise. For these reasons, we find that the broad language of the release applies to Salmeron's subsequent filing of a *qui tam* complaint.

In its complaint in the circuit court, Enterprise also alleged that Salmeron breached her duty of loyalty to Enterprise by failing to disclose to Enterprise, while she was an employee in a position of trust, the fraud that she had allegedly uncovered. Such a breach is established when a person with a fiduciary duty to a party breaches that duty in a manner which is the proximate cause of injury to the party to whom that duty is owed. Alpha School Bus Co. v. Wagner, 391 Ill. App. 3d 722, 747, 910 N.E.2d 1134, 1158 (2009). Enterprise alleged that Salmeron failed to disclose to Enterprise the fraudulent activity she allegedly discovered while working for Enterprise in order to enrich herself by later bringing a *qui tam* lawsuit against Enterprise, without ever having given Enterprise the opportunity to rectify the problem. As a high-level member of Enterprise's management team, Salmeron owed Enterprise a duty of loyalty. Salmeron's duty of loyalty to Enterprise was much more than a singular duty of acting to preserve the corporate *res* for the benefit of the shareholders. We note that disclosure of the alleged fraud arguably may have indirectly benefitted Enterprise from an ethical perspective by enabling it to remove corrupt elements from its company. Salmeron also owed Enterprise a duty not to improperly profit or seek to profit from the knowledge she acquired while in a position of trust at the company, to the detriment of the company. Salmeron's actions

were in competition and conflict with Enterprise's interests. Specifically, it was in Enterprise's interest to root out fraud and corruption within the company. On the other hand, it was in Salmeron's interest not to stop the corrupt activities until she was able to gather sufficient information in order to bring a *qui tam* lawsuit against Enterprise. There is no doubt that she could personally profit by sharing in the proceeds of a successful prosecution of that lawsuit. It was reasonable for Enterprise to expect that Salmeron would not exploit her management position within the company for her own personal benefit. Enterprise reasonably expected that Salmeron would not do anything to hinder the corporation in its business operations. Alpha School Bus Co., 391 Ill. App. 3d at 736-37, 910 N.E.2d at 1149-50; Comedy Cottage, Inc. v. Berk, 145 Ill. App. 3d 355, 359-60, 495 N.E.2d 1006, 1011 (1986). We agree that Salmeron's position of authority and trust at Enterprise, serving as its general manager and director of operations, imposed upon her a duty of loyalty to Enterprise. That duty included the requirement that she not seek to profit at the expense of the corporation. Comedy Cottage, 145 Ill. App. 3d at 359-60, 495 N.E.2d at 1011. The fact that Enterprise's corporate by-laws do not enumerate the duties owed to Enterprise by Salmeron does not negate the duty of loyalty which Salmeron owed to Enterprise. She clearly breached that duty when, as her own admission establishes, she lied to Enterprise in signing the general release in order to induce a significant settlement payment knowing at the time that she had no intention of honoring it. Further, she failed to give Enterprise the opportunity to act against the employees allegedly engaging in violation of the False Claims Act by failing to inform Enterprise of the fraud she had supposedly uncovered.

Under the facts of this case, unlike the dissent, we decline to follow the federal district

13

court's nonbinding suggestion that the release agreement signed between Salmeron and Enterprise did not apply to Salmeron's filing of a *qui tam* lawsuit. The plain language of the release stated that Salmeron would release Enterprise from all claims relating to her employment with Enterprise. As the general manager and director of operations for Enterprise, it is evident that Salmeron's employment put her in a position to uncover the alleged fraud. It is also undisputed that the *qui tam* lawsuit which she brought in federal court, alleging that employees of Enterprise had committed fraud against the Department of Education, was based upon information which she learned while working for Enterprise in her management capacity. It was Salmeron's duty to reveal such alleged fraud to Enterprise. She also had a duty to refrain from seeking to personally benefit by her nondisclosure of the activity which clearly put the company at risk. However, we do not imply nor suggest that an employee who files a *qui tam* action instead of informing their employer of alleged fraud within the company commits a breach of their duty of loyalty. The unique facts of this case, measured against applicable case law informs our analysis. Thus, our holding is based upon the unique facts of this case. Accordingly, we hold that the trial court did not err in granting summary judgment for Enterprise on both counts of its complaint.

In an "emergency motion" filed in the circuit court of Cook County on September 19, 2008, after the entry of summary judgment for Enterprise, Salmeron sought dismissal of Enterprise's lawsuit on the basis that it was brought in violation of section 15 of the Citizen Participation Act (the Act), which became effective in August, 2007. 735 ILCS 110/15 (West 2008). Thus the Act was in effect for over one year before Salmeron cited it as the basis for her motion to dismiss Enterprise's lawsuit, *after* the trial court had ruled against her. Salmeron presented no valid reason for failing to

raise this defense during the lengthy pendency of the case in the circuit court, *before judgment was entered*. Ordinarily, affirmative defenses must be set forth in the answer or reply to a complaint. 735 ILCS 5/2-613 (West 2006). This requirement is to prevent a plaintiff from being taken by surprise, and a defendant who fails to timely file an affirmative defense is deemed to have forfeited that defense. Cordeck Sales, Inc. v. Construction Systems, Inc., 382 Ill. App. 3d 334, 376, 887 N.E.2d 474, 515 (2008); Spagat v. Schak, 130 Ill. App. 3d 130, 134, 473 N.E.2d 988, 991-92 (1985). The Act relied upon by Salmeron was not in effect when Enterprise filed its lawsuit against Salmeron in the circuit court in 2006. The Act became effective in 2007, a year after the instant lawsuit was filed. Yet Salmeron did not seek to invoke the immunity of the Act which she now claims. In fact, she waited until after judgment was entered against her and the case was concluded in the trial court before raising the affirmative defense. Accordingly, she has forfeited that defense. Furthermore, she had already been barred by the trial court's order from presenting any defense to the lawsuit. For these reasons, we hold that the trial court did not err in denying Salmeron's post-judgment motion to dismiss Enterprise's lawsuit.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

HOFFMAN, J., concurs.

THEIS, J., dissenting in part.

15

1–08-2936

JUSTICE THEIS, dissenting in part:

I respectfully disagree with the majority's opinion affirming summary judgment for Enterprise. First, I do not believe that Enterprise produced sufficient evidence to establish as a matter of law that Salmeron fraudulently induced it to sign the release. Additionally, Enterprise cannot maintain its claim that Salmeron breached her fiduciary duty. Therefore, I dissent.

Summary judgment is a drastic means of disposing of litigation and should not be granted unless the movant's right to judgment is clear and free from doubt. Adams v. Northern Illinois Gas Co., 211 Ill. 2d 32, 43 (2004). In determining whether summary judgment is appropriate, we must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. Adams, 211 Ill. 2d at 43.

First, Enterprise contended that it was entitled to summary judgment on its claim for fraud in the inducement. Fraud in the inducement of a contract is a defect which renders a contract voidable at the election of the innocent party. Tower Investors, LLC v. 111 East Chestnut Consultants, Inc., 371 Ill. App. 3d 1019, 1030 (2007). In order for a misrepresentation to constitute fraud that would permit a court to set aside a contract, the party seeking to do so must establish that there was " ' "a representation in the form *** of a material fact, made for the purpose of inducing a party to act; it must be false and known by the party making it to be false, or not actually believed by him, on reasonable grounds, to be true; and the party to whom it is made must be ignorant of its falsity, must reasonably believe it to be true, must act thereon to his damage, and in so acting must rely on the truth of the statement." ' " Tower Investors, 371 Ill. App. 3d at 1030-31, quoting James v. Lifeline Mobile Medics, 341 Ill. App. 3d 451, 456 (2003), quoting Wilkinson v. Appleton, 28 Ill.

16

2d 184, 187 (1963). The defendant's knowledge of the falsity of the statement, or his deliberate concealment with the intent to deceive, is an essential element of a common law fraud claim. <u>Fox v. Heimann</u>, 375 Ill. App. 3d 35, 47 (2007). The plaintiff must prove such fraud claims by clear and convincing evidence. <u>Fox</u>, 375 Ill. App. 3d at 47.

Enterprise contended that Salmeron falsely represented that she would release all claims against Enterprise, while knowing that she intended to file the *qui tam* action against it. Enterprise submitted Tornatore's affidavit in support, in which he stated that Salmeron agreed to release Enterprise and Tornatore from "any and all actions *** of whatsoever nature, growing out of or related in any way to any and all known and unknown[,] foreseen and unforeseen damages or consequences relating to her employment," which language is taken directly from the release. Implicit in Enterprise's argument is the premise that the release bars the filing of a *qui tam* lawsuit. To evaluate that claim, we must examine the scope of the release.

A release is a contract whereby a party relinquishes a claim to the person against whom the claim exists. <u>Farmers Automobile Insurance Ass'n v. Kraemer</u>, 367 Ill. App. 3d 1071, 1073 (2006). Accordingly, a release is subject to the rules governing the construction of contracts. <u>Fuller Family Holdings, LLC v. Northern Trust Co.</u>, 371 Ill. App. 3d 605, 614 (2007). Construction of a release is a question of law. <u>Fuller Family Holdings</u>, 371 Ill. App. 3d at 614.

The intention of the parties controls the scope and effect of a release, and this intent is discerned from the express language of the release as well as the circumstances of its execution. <u>Fuller Family Holdings</u>, 371 Ill. App. 3d at 614; <u>Kraemer</u>, 367 Ill. App. 3d at 1074. The release must spell out the intention of the parties with great particularity and must be strictly construed against

the benefitting party. <u>Fuller Family Holdings</u>, 371 Ill. App. 3d at 614. Where the terms of a release are clear and explicit, the court must enforce them as written. <u>Fuller Family Holdings</u>, 371 Ill. App. 3d at 614. However, the release will not be construed to include claims not within the contemplation of the parties at the time the agreement was executed. <u>Kraemer</u>, 367 Ill. App. 3d at 1074.

Where a release contains words of general release in addition to recitals of specific claims, the words of general release are limited to the particular claim to which reference is made. <u>Carona v. Illinois Central Gulf R.R. Co.</u>, 203 Ill. App. 3d 947, 951 (1990); <u>Fuller Family Holdings</u>, 371 Ill. App. 3d at 614. That is, we must give effect to a more specific clause and qualify or reject a more general clause as the specific clause makes necessary. <u>American Federation of State, County & Municipal Employees v. State Labor Relations Board</u>, 274 Ill. App. 3d 327, 337 (1995); <u>Kraemer</u>, 367 Ill. App. 3d at 1073 ("general words [of release] are limited to things or persons of the same kind or class as those which are particularly mentioned"). In any event, no language of a release, "no matter how all-encompassing," will prevent a reviewing court from inquiring into the circumstances surrounding the execution of the release to ascertain whether it accurately reflected the parties' intention. <u>Kraemer</u>, 367 Ill. App. 3d at 1074, citing <u>Carlile v. Snap-on Tools</u>, 271 Ill. App. 3d 833, 838 (1995).

In this case, the majority focuses on the following language in the release:

> "The parties hereby fully and forever discharge and release each other *** from any and all actions [and] *** claims *** relating in any way to events occurring prior to and including the date of execution of the Agreement *** growing out of or related in any way *** to all known and unknown *** damages or consequences

18

relating to [Salmeron's] employment [by Enterprise.]"

The majority tacitly concludes, with no analysis, that the *qui tam* claim was sufficiently "related to [Salmeron's] employment" to be barred by the release.

However, the release continues:

"[W]ithout in any way limiting the generality of the foregoing language, Salmeron's release shall include any claims for relief or causes of action under Title VII of the Civil Rights Act of 1964 ***; the Family and Medical Leave Act of 1993 [FMLA]***; the Americans with Disabilities Act [ADA]***; the Rehabilitation Act of 1973 ***; the Civil Rights Enforcement Statutes ***; the Age Discrimination in Employment Act [ADEA]***; the Older Workers Benefit Protection Act ***; the Fair Labor Standards Act of 1938 ***; the National Labor Relations Act [NLRA]***; the Illinois Human Rights Act ***; and any other federal, state, or local statute *** dealing in any respect with discrimination in employment, and in addition, from any claims *** brought on the basis of wrongful discharge, breach of an oral or written agreement or contract, misrepresentation, defamation, interference with contract, intentional or negligent infliction of emotional distress ***, or sexual harassment.

The release also states that it was intended to resolve "the issues between the parties *** concerning Salmeron's employment with [Enterprise] and resolving all claims and/or potential claims *** for sexual harassment and discrimination as more fully set forth in Salmeron's complaint filed in *Rhonda Salmeron v. Enterprise Recovery System, Inc. and Sam Tornatore*, case number 03 C 3332."

Applying the aforementioned principles of contract construction, I do not believe that the parties intended to include the *qui tam* claim within the scope of this release and, therefore, Salmeron was not barred from filing her *qui tam* claim. Although the release purports to bar "any and all actions \*\*\* of whatsoever nature, growing out of or \*\*\* relating to her employment," such broad language, "no matter how all-encompassing," cannot bar claims that were not within the contemplation of the parties at the time the release was drafted. See Kraemer, 367 Ill. App. 3d at 1074; Carlile, 271 Ill. App. 3d at 838. This broad language must be circumscribed by the specific causes of action enumerated in the release. See American Federation of State, County & Municipal Employees, 274 Ill. App. 3d at 337. Those causes of action – including actions under Title VII, FMLA, ADA, ADEA, civil rights enforcement statutes, the Illinois Human Rights Act, and actions "dealing in any respect with discrimination in employment" under the common law – concern the type of harassment and employment discrimination claims that were the subject matter of Salmeron's then-pending sexual harassment lawsuit that gave rise to this release. See Carona, 203 Ill. App. 3d at 951. The release specifically prohibits Salmeron from bringing such harassment and employment discrimination causes of action, which is consistent with the parties' stated intention that the release resolved "all claims and/or potential claims \*\*\* for sexual harassment and discrimination as more fully set forth in *Rhonda Salmeron v. Enterprise Recovery System, Inc. and Sam Tornatore*, case number 03 C 3332."

Although Salmeron apparently learned of the activities underlying her *qui tam* claim while she was employed at Enterprise, that claim cannot be said to be "related to her employment" in the

context of the release as the parties originally intended. As discussed, the release seeks waiver of any statutory or common law harassment or employment discrimination claims Salmeron may have. The *qui tam* claim derives from Enterprise's alleged violation of the federal False Claims Act, which imposes civil liability on those who knowingly defraud the federal government by presenting and receiving payment for false or fraudulent claims. 31 U.S.C. §3729(a)(1) (2006); see also Rockwell International Corp. v. United States, 549 U.S. 457, 463, 167 L. Ed. 2d 190, 200, 127 S. Ct. 1397, 1403 (2007). The nature of the *qui tam* claim is unrelated to employment discrimination and harassment and cannot be construed to come within the scope of the release. See Fuller Family Holdings, 371 Ill. App. 3d at 615.

Therefore, because Salmeron was not prohibited from bringing the *qui tam* claim under the terms of the release, she could not have made the misrepresentation asserted by Enterprise in this case. Salmeron's admissions do indeed establish that she was gathering documentation in support of the *qui tam* claim before she signed the release and that she "did not intend to release the [*qui tam*] claim." However, those admissions are not inconsistent with the language of the release, in which the parties only intended for Salmeron to relinquish any pending and future harassment or employment discrimination claims against Enterprise and Tornatore. Thus, Salmeron could reasonably have believed that she could pursue her *qui tam* without violating the terms of the release and did not knowingly make the claimed false statement. See Tower Investors, 371 Ill. App. 3d at 1030-31. Therefore, I believe that Enterprise has failed meet its burden to establish by clear and convincing evidence that Salmeron fraudulently induced it to enter into the release and summary judgment was inappropriate. See Fox, 375 Ill. App. 3d at 47; Tower Investors, 371 Ill. App. 3d at

1–08-2936

1030-31.

In addition, I do not believe that Enterprise is entitled to summary judgment on its breach of fiduciary duty claim. To prevail on a breach of fiduciary duty claim, a plaintiff must establish: (1) a fiduciary duty on the part of the defendant; (2) the defendant's breach of that duty; (3) an injury; and (4) proximate cause between the breach and the injury. Alpha School Bus Co. v. Wagner, 391 Ill. App. 3d 722, 747 (2009). I do not believe that Enterprise has established Salmeron's fiduciary duty, nor has it demonstrated that it suffered any injury.

In its complaint, Enterprise alleged that Salmeron was "an employee and/or corporate officer" of Enterprise and as such, she owed Enterprise a fiduciary duty of loyalty. However, it has not demonstrated that Salmeron violated any duty of loyalty as an employee or that she owed Enterprise a fiduciary duty as an officer of the corporation.

Employees and corporate officers are held to different standards with respect to their fiduciary duties to a corporation. Cooper Linse Hallman Capital Management, Inc. v. Hallman, 368 Ill. App. 3d 353, 357 (2006). An employee's duty to a company generally resembles a principal-agency relationship. Corroon & Black of Illinois, Inc. v. Magner, 145 Ill. App. 3d 151, 160 (1986). An employee's duty of loyalty most frequently arises in the context of the employee's duty to not compete with the employer while still employed by it. See, *e.g.*, Hallman, 368 Ill. App. 3d at 357; Wagner, 391 Ill. App. 3d at 747. In such cases, an employee may plan, form, and outfit a rival company in the same industry as the employer while employed, so long as he does not engage in competition until after his resignation. Hallman, 368 Ill. App. 3d at 356-57.

The present case does not involve Salmeron's establishment of a rival company; Enterprise

22

has not alleged or presented any evidence of Salmeron's prohibited competition. Rather, Enterprise has erroneously asserted that Salmeron's breach of fiduciary duty arose in her capacity as an employee. Therefore, Salmeron's duty of loyalty as an employee cannot be the basis of her liability here.

On the other hand, corporate officers owe a heightened fiduciary duty of loyalty to their corporate employer not to: (1) actively exploit their positions within the corporation for their own personal benefit; or (2) hinder the ability of the corporation to continue the business for which it was developed. Hallman, 368 Ill. App. 3d at 358. Here, Enterprise contended that Salmeron breached her duty by: (1) allegedly using Enterprise's corporate assets in the form of its confidential and proprietary documents for her own benefit by submitting them in support of her *qui tam* claim, in which she would stand to collect part of the monetary judgment, if successful; and (2) failing to inform Tornatore or any other corporate officer of her suspicion that Enterprise was submitting false claims, which allegedly hindered Enterprise from continuing its business of performing collection activities for the United States Department of Education. Thus, Enterprise intended to allege that Salmeron violated her fiduciary duty as an officer of the company.

Although Enterprise seeks to impose this heightened fiduciary duty upon Salmeron, it has failed to demonstrate that that standard applies in this case. It has long been held that the directors and officers of a corporation are those entrusted with the management of corporate property for the benefit of the shareholders. Price v. State, 79 Ill. App. 3d 143, 149 (1979). The burden of pleading and proving the existence of the fiduciary relationship lies with the party seeking to establish it. Citicorp Savings of Illinois v. Rucker, 295 Ill. App. 3d 801, 809 (1998).

23

In its motion for summary judgment, Enterprise admitted that Salmeron was "technically not an officer or director of [Enterprise]" but, rather, was a general manager. Nevertheless, it claimed that Comedy Cottage, Inc. v. Berk, 145 Ill. App. 3d 355, 360-61 (1986), imposes the same heightened fiduciary duty owed by directors and officers upon a general manager of a corporation.

However, Enterprise's reliance on Comedy Cottage is entirely misplaced. The defendant in that case was vice president of the corporation as well as the general manager. The holding in that case concerned a corporate officer's liability for breaching his fiduciary duty – after resigning his corporate post but retaining a managerial position – when the offending transaction began during his tenure as a corporate officer. Comedy Cottage, 145 Ill. App. 3d at 360. The court made clear that the defendant learned of certain ongoing contract negotiations because of his "confidential position" as vice president. He then "used the knowledge gained as a result of his position [as vice president]" to enter into an agreement in violation of his fiduciary duty to the corporation. Comedy Cottage, 145 Ill. App. 3d at 360-61. In this case, there is no allegation that Salmeron ever served as a corporate director or officer, and Comedy Cottage does not independently expand the corporate duty of loyalty to general managers.

Notwithstanding Enterprise's admission that Salmeron was not a corporate officer or director, the evidence presented by Enterprise fails to establish that Salmeron's duties came within the scope of those performed by corporate officers. Corporate officers are elected by the board of directors and "perform such duties in the management of the property and affairs of the corporation as may be provided in the by-laws, or as may be determined by resolution of the board of directors." 805 ILCS 5/8.50 (West 2006).

24

Enterprise did not submit a copy of the by-laws or any other evidence that would establish the duties of a corporate officer. It merely alleged that Salmeron's duties included maintaining industry-specific computer software, training employees in the use of the software, and supervising employees responsible for collecting revenue. By Enterprise's own description, Salmeron's duties were limited to management of computer software and those employees who used it. It makes no assertion, and likewise offers no proof, that Salmeron was responsible in any way to the shareholders for the management of the property of the corporation as a whole. Salmeron's duties, as enumerated by Enterprise, are insufficient to classify her as a corporate director or officer. See Price, 79 Ill. App. 3d at 149, Rucker, 295 Ill. App. 3d at 809. Thus, there is no basis upon which to impose the fiduciary duty of loyalty owed by corporate officers and directors upon Salmeron.

Even if Enterprise could establish that Salmeron breached a fiduciary duty of loyalty of whatever degree, it did not demonstrate that it suffered any injury resulting from the breach. Enterprise claimed that Salmeron misappropriated its corporate assets, in the form of documents, for her personal benefit because she would receive a portion of any judgment awarded in the *qui tam* lawsuit in which the documents were used. However, Enterprise failed to allege how it was thereby harmed. The False Claims Act claim filed by Salmeron was dismissed and Enterprise was not ordered to pay any judgment. Nor did Enterprise seek to recover the *de minimus* value of the documents themselves.

Additionally, Enterprise claimed that because Salmeron failed to inform Tornatore of the suspected fraud, it was hindered from continuing its business of performing collection activities for the United States Department of Education. However, it produced no evidence demonstrating that

it lost its contract with the Department of Education, or any other client, or that it was otherwise prevented from continuing its collection business. Therefore, Enterprise has not established that it suffered any injury as a result of Salmeron's alleged breach of fiduciary duty.

For all of the foregoing reasons, I would reverse the circuit court's judgment and remand for further proceedings.